When this case was first before this court (see In re White's Estate, 41 N.M. 631, 73 P.2d 316) we reversed and remanded directing the trial court, among other things, to determine whether the life insurance policy upon the life of Morris Downey White was his separate property or was property of the community of the said Morris Downey White, deceased, and his wife, Mildred Byram White, who is now also deceased. Subsequent to the death of White his widow married one Fitzhugh and will hereafter be referred to as Mrs. Fitzhugh.
Certain facts are set out in the original opinion which need not be here repeated.
Upon the retrial, the lower court decreed to the Fitzhugh heirs the $500 which was held to belong to them by virtue of the exemption statute which allowed such an amount to Mrs. Fitzhugh as the widow of the deceased White, but held the insurance policy to be the separate property of the deceased husband from which judgment the Fitzhugh heirs appeal.
The question now presented is as to the appropriateness of the trial court's findings and conclusions that the life insurance policy and its proceeds are the separate property of the estate of the deceased, Morris Downey White, and not the property of the community.
It appears from the court's findings and the unchallenged testimony that the deceased White, while he was in the service of the United States Navy, and in the month of February, 1918, took out government insurance of the usual type provided exclusively for those in such military service, in the sum of $10,000. After carrying the same for about four months, and in June of that year, White had the insurance cancelled on July 23, 1918, and while yet in the service, he married Mildred Byram White was discharged from the navy on August 30, 1918. In the month of November, 1919, he applied for reinstatement of his insurance. Pursuant to the rules and regulations of the government and without additional examination or other requirement excepting the payment of the first installment upon the premium, the insurance was reinstated as originally carried. White died intestate on February 13, 1920, leaving his said widow and a son by a former marriage, William C. White.
This court upon the original appeal strongly indicated, though it did not directly decide, the rule to be that "A life insurance policy payable to the estate of a person is his separate property if the policy was obtained before his marriage, and community property if the policy was obtained subsequent to marriage," citing McKay on Community Property (2d. ed.) Secs. 479-480, and other authority. We now hold directly that this is the true rule, *Page 204 
and, with approval, make further reference to language quoted in the former appeal, viz., that "The status of proceeds or avails of such insurance, whether community property or the separate property of the insured, is not governed by the marital status of the insured at the time of his death."
Were the insurance proceeds in question the proceeds from the original policy of February, 1918, which was taken out before the marriage, we should then have little difficulty. It would be the separate property of the deceased, and upon his death would go, one-fourth to his widow, or, since she also is now deceased, to her heirs, and the balance would go to the other heir of the insured, the son by a former marriage.
In the case before us we have an insurance policy issued and allowed to lapse before marriage and then after marriage, "reinstated" as hereinbefore set out. The question thus presented is whether a reinstatement of a life insurance policy is the making of a new contract of insurance, or, does it mean simply the insured is restored to the same condition he was in before forfeiture, where, as in this case, the reinstatement is without an exaction of any other condition excepting that the insured must simply signify by his application that he desires to have his lapsed insurance reinstated, and that with the commencement again of the payment of the premiums as formerly fixed, he becomes reinstated. See World War Veterans' Act, 1924, 43 Stat. 607, §§ 304-306, 38 U.S.C.A. §§ 515-517.
We find in the cases many definitions of "reinstatement," and the great weight of authority is in support of the rule that a reinstatement of insurance continues the original policy in force and is not executing a new contract of insurance.
"Reinstatement of life policy after default in payment of premiums continues original policy in force. * * * To reinstate a policy holder or one who has allowed his policy to lapse does not mean new insurance or taking out a new policy, but does mean that the insured has been restored to all the benefits accruing to him under the policy contract, the original policy." Missouri Life Insurance Co. v. Jensen, 139 Okla. 130, 281 P. 561.
"A reinstatement of the insured after a forfeiture is not the making of a new contract where no different terms are agreed upon. It simply restores the old contracts." Goodwin v. Provident Life Assurance Association, 97 Iowa 226, 66 N.W. 157, 32 L.R.A. 473, 59 Am.St.Rep. 411.
See note in 98 A.L.R. 341. Also see Lowry v. Aetna Life Insurance Co., Tex.Civ.App., 120 S.W.2d 505, a recently decided case, which reviews the authorities exhaustively, and defines the term "to reinstate" as recognized by the majority, and we believe, the better reasoned cases, holding the term means "restoring to one all the benefits accruing under the policy contract." *Page 205 
We hold the proper rule to be as above stated, and the trial court was correct in so deciding. The policy was "obtained" before marriage and is therefore the separate property of the insured.
Appellants would have us distinguish between the rule which ordinarily governs in regular insurance contracts and that which should govern as to government insurance. We see none. In fact in the instant case, the insured had at the time of his reinstatement been discharged from the military service of the United States. He could not have taken out new insurance of this character. The factual situation argues for the retention of the rule as to reinstated insurance of this character.
It is significant also that the government agency considers the reinstatement as simply carrying on the old contract, and even has given it a retroactive effect of twenty-four days. The Bureau records show that the veteran "reinstated his insurance on November 24th, 1919, which reinstatement was effective November 1, 1919."
One other question is raised upon the cross appeal of William C. White. It is whether the heirs should be held to account for the amount of $230, being the total of four monthly payments of $57.50 each, received by Mrs. Fitzhugh as administratrix of the estate of Morris Downey White during her lifetime. White seeks to deduct this sum from the share of the insurance proceeds going to Mrs. Fitzhugh's heirs, the appellants.
The trial court refused to entertain a request that such amount be deducted, citing as the reason the fact that there had been no legal account or proceeding had in the estate to determine any personal liability of the said Mildred B. White for any monies that came into her hands as administratrix.
We do not feel the facts in evidence require us to disturb the court's action in this respect.
For the reasons stated, the judgment is affirmed, and it is so ordered.
BICKLEY, C.J., and SADLER and MABRY, JJ., concur.
BRICE, J., did not participate.