384 P.2d 465

**Geneva Love MORRIS, Individually, and as Next Friend of Janet Morris, a minor, and H. E. Mills, Plaintiffs-Appellees,**

**v.**

**FIREMAN'S FUND INSURANCE COMPANY, Defendant-Appellant.**

**No. 7252.**

Supreme Court of New Mexico.

Aug. 12, 1963.

**396**

McAtee, Toulouse, Marchiondo, Ruud & Gallagher, Albuquerque, for appellant.

Sutin & Jones, Albuquerque, for appellees.

CHAVEZ, Justice.

Fireman's Fund Insurance Company, defendant-appellant, appeals from a judgment of the district court of Bernalillo County. Plaintiffs-appellees brought suit, seeking recovery from appellant under the medical provision of the insurance policy which covered the automobile at the time of the accident in which Mrs. Geneva Love Morris and her minor daughter, Janet Morris, were injured. Appellant's answer admits the issuance of the insurance policy but denies all other allegations. The answer alleged two affirmative defenses to the effect that all monies owing to the injured appellees, pursuant to the policy, had been paid, and that the claim was based upon fraud. The cause was tried by the district court, without a jury, who, after making its findings of fact and conclusions of law, adopted those requested by appellees and rendered judgment for appellees in the amount of $1248.

The facts stipulated by the parties are as follows: That Geneva Morris and her minor daughter were injured on August 11, 1960, in an automobile accident which occurred about five miles south of Santa Rosa, New Mexico; that the automobile involved was owned by Mrs. Morris' mother, Vista W. Wilson, the "named insured;" that it was a one-car accident and the automobile was being driven by Mrs. Morris with Mrs. Wilson and Janet Morris, age seven, being passengers; that Mrs. Morris suffered serious injuries to her head, fractured ribs, teeth damage, and a crushed knee; that Janet Morris suffered a broken leg and shock; that Mrs. Morris was released from St. Joseph's Hospital in Albuquerque on August 15, 1960, by her physician, Dr. Eugene Szerlip; that Janet Morris, having been previously released, remained in the home of H. E. Mills in Albuquerque for some 78 days; that Mills is Mrs. Morris' son-in-law; that Mills

does not operate a nursing home or hospital nor does he have an occupation license to operate such a facility; that neither Mills nor his wife is a doctor, or registered or practical nurse.

It was further stipulated that at the time of Mrs. Morris' release from St. Joseph's Hospital on August 15, 1960, she was still under the professional care of Dr. Szerlip for therapy treatments and consultation until November 5, 1960; that there was no physician or facilities competent to administer to Mrs. Morris' needs in her place of residence in Globe, Arizona; that upon her release from St. Joseph's Hospital, Mrs. Morris had three alternatives with reference to her further care: (1) Remain at St. Joseph's Hospital; (2) return to the Guadalupe County Hospital at Santa Rosa; or (3) reside with the Mills family in Albuquerque; that after consultation with members of her family and Dr. Szerlip, Mrs. Morris chose to reside with the Mills family for the reasons that she was to remain under Dr. Szerlip's care for therapy and she did not desire to be separated from her daughter, Janet, who had been residing with the Mills family since her release from Guadalupe County Hospital; that Janet had a cast on until October 8, 1960; that even though released from the hospital, Mrs. Morris was in no physical condition to care for herself or her daughter; that the expenses incurred for a wheel chair rental from Highland Pharmacy and for iron shoe and weights from Cook's Sporting Goods were proper claims.

The trial court found:

"14. That Geneva Love Morris and Janet Morris remained at the Mills home from August 15, 1960, through November 7, 1960. During that period of time, H. E. Mills and Joyce Morris Mills, his wife, furnished to Geneva Love Morris and Janet Morris the following services:

"A. Three meals a day for both Mrs. Morris and Janet Morris, for which H. E. Mills charged the sum of $1.25 per meal, for a total of $7.50 per day for both Mrs. Morris and Janet Morris.

"B. A room for Geneva Love Morris and Janet Morris, for which H. E. Mills charged the sum of $1.50 per person per day, a total of $3.00 per day.

"C. Laundry services, including washing and ironing for Geneva Love Morris and Janet Morris, for which H. E. Mills charged the total sum of 70¢ per day.

"D. The following personal care services:

1. Serving meals in bed when necessary.

2. Lifting or assisting Geneva Love Morris or Janet Morris from bed to chair and from chair to table and from chair to automobile for transportation purposes.

3. Bathing.

4. Administering to bathroom needs.

5. Dressing.

6. Care of Mrs. Morris' head and hair.

7. General assistance and care when necessary, for which personal care services H. E. Mills charged the sum of $1.50 per person per day, for a total of $3.00 per day.

"E. Transportation of Geneva Love Morris to and from Dr. Szerlip's office each day for therapy treatments and transportation of Janet Morris to and from school in the morning, noon and evening, an average of 15 miles travel per day, for which H. E. Mills charged the total sum of $1.80 per day, predicated on an agerage of 15 miles per day at 12¢ per mile.

"F. The total amount charged by H. E. Mills was $1,248.00.

"15. That the above services rendered were reasonable in amount, necessary services, and were the same necessary services which Geneva Love Morris and Janet Morris would have received in a hospital if they had remained therein."

Appellant's first point is that the trial court erred in its conclusion of law No. 2, that the services to appellees by the Mills were services included within the coverage of the insurance policy.

The insurance policy provides:

"INSURING AGREEMENTS

\* \* \* \* \* \*

"Coverage C—Automobile Medical Payments. To pay all reasonable expenses incurred within one year from the date of accident for necessary medical, surgical and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services:

\* \* \* \* \* \*

"CONDITIONS

\* \* \* \* \* \*

"5. Limits of Liability—Coverage C. The limit of liability for medical pay-

ments stated in the declarations as applicable to 'each person' or 'each insured' is the limit of the company's liability for all expenses incurred by or on behalf of each person or insured who sustains bodily injury, sickness, disease or death as the result of any one accident."

Appellant does not attack the trial court's findings of fact, but contends that the facts do not support the conclusion of law that the services rendered were within the coverage of the policy. Appellant argues that appellees' claim cannot be construed as a medical, surgical, dental or ambulance service. They would have us construe the contract so as to limit its liability to those services performed by professional persons while insured is confined in a hospital.

The insurance policy before us does not provide that the necessary medical or hospital services must be rendered to an insured while he is "necessarily confined in the hospital." Many insurance policies so provide, and it has been held that the insurer has the right to limit its liability to hospital expenses incurred during the period that the insured was "necessarily confined in the hospital." Hesse v. United States Fidelity & Guaranty Co., 143 Or. 700, 21 P. 2d 1090. See also Rew v. Beneficial Standard Life Ins. Co., 41 Wash.2d 577, 250 P.2d 956, 35 A.L.R.2d 891, where the policy

provided that benefits would be paid while the insured:

"* * * shall be necessarily confined as a resident bed patient within any hospital upon the advice of, and regularly attended by, a legally qualified physician or surgeon * * *."

That policy also provided:

"The word hospital as used in this policy shall not include a rest, convalescent or nursing home."

■ There are no words of limitation in the policy involved. The coverage provided for is in broad terms. Appellant agreed to pay all reasonable expenses incurred for necessary medical, surgical and dental services, including prosthetic devices and necessary ambulance, hospital, professional nursing and funeral services. If appellant desired to limit the coverage to "those services performed by professional persons in a recognized institution," or "while confined in a hospital," it should have been so provided in clear and unambiguous language. Compare Park View Hospital Ass'n v. Peoples Bank & Trust Co., 211 N.C. 244, 189 S.E. 766; Succession of Cormier, (La.App.1955), 80 So.2d 571. We also note that appellant stipulated that the claims of Highland Pharmacy for wheel chair rental and Cook's Sporting Goods for an iron shoe and weights were proper

claims. Compare Haggerty's Case, 298 Mass. 466, 11 N.E.2d 583.

It must also be borne in mind that under the provisions "CONDITIONS, 5, Limits of Liability—Coverage C," the limitation clause covers "all expenses incurred." We construed this provision, together with the medical clause, in Martinez v. Gulf Insurance Company, 68 N.M. 90, 358 P.2d 1003. We there said:

> " * * * 'Part II' of the policy is entitled 'Expenses for Medical Services' and clause 'Coverage C' refers to 'medical payments.' Nevertheless, 'Coverage C' clause covers items other than 'medical payments' and the limitation clause covers 'all expenses' under this coverage, whether strictly medical, funeral or other compensable items. * * *"

 It is settled that an insurance policy which may reasonably be construed in more than one way should be construed liberally in favor of the insured; that is, if there are terms of doubtful meaning or ambiguity, the doubt must be resolved in favor of the insured. Erwin v. United Benefit Life Insurance Company, 70 N.M. 138, 371 P.2d 791. Also, we are not at liberty either to disregard words that have been used by the parties or to insert words that they have not used. Fire Association v. Patton, 15 N.M. 304, 107 P. 679, 27 L.R.A.,N.S., 420.

Appellant's points II, III and IV are argued together. They are:

"II. The trial court erred in not finding as a fact, as requested by the defendant, that the services performed by the Mills were voluntary and gratuitous.

"III. The trial court erred in not finding as a matter of law that the charges were not incurred by the plaintiffs.

"IV. The trial court erred in rendering judgment for the plaintiffs for the reason that it made no finding nor is there any evidence tending to show that the charges were incurred by the plaintiffs."

Appellant requested the trial court to find and conclude that the services performed by Mr. and Mrs. Mills were voluntary and gratuitous. These requests were refused. Appellant argues that the services performed were gratuitous and, therefore, the expenses were not incurred. This contention we cannot accept.

Appellant cites United States v. St. Paul Mercury Indemnity Company, (8 C.C.A. 1956), 238 F.2d 594; Drearr v. Connecticut

General Life Insurance Company, (La.App. 1960), 119 So.2d 149; Protective Industrial Insurance Company of Alabama v. Gray, 40 Ala.App. 578, 118 So.2d 289; Gordon v. Fidelity & Casualty Company of New York, 238 S.C. 438, 120 S.E.2d 509. These cases are clearly distinguishable from the case before us. They involve cases wherein a veteran was treated without charge at a Veteran's Hospital and recovery was sought from the insurance company under an assignment from the insured to the Veterans Administration, or where the veteran himself sought recovery. In United States v. St. Paul Mercury Indemnity Company, supra, the court held that, since the veteran was accepted for treatment at a Veteran's Hospital under the statute as being entitled to free care, the Veterans Administration, which had taken an assignment from the veteran of veteran's rights under a polio policy which insured the veteran for "expenses actually incurred," could not recover from the insurer since, under the statute, the veteran had incurred no liability to the government arising from such hospitalization. To the same effect is the ruling in Drearr v. Connecticut General Life Insurance Company, supra, and Gordon v. Fidelity & Casualty Company of New York, supra. The case of Protective Industrial Insurance Company of Alabama v. Gray, supra, is one wherein the medical services were handled partially as charity by the hospital and there was no obligation on the part of the insured to pay anything. The court held that he could not be heard to assert a claim for "items of actual hospital expense," citing United States v. St. Paul Mercury Indemnity Company, supra.

■ The trial court, in finding of fact No. 14, found that Mr. and Mrs. Mills furnished the services mentioned therein for a consideration. The court concluded that the services were necessary and within the coverage of the insurance policy. The services rendered were for the period from August 15, 1960, through September 30, 1960, and from October 1, 1960, through October 31, 1960, as shown by the bills submitted by Mills to Mrs. Morris on September 30 and November 1, 1960. Under the evidence, the trial court correctly refused to find that the services were gratuitous. Compare A. G. Crunkleton Electric Co. v. Barkdoll, 227 Md. 364, 177 A.2d 252.

■■ It is our view that the only questionable claim is the item of transportation for Janet Morris to and from school. This item, we feel, is beyond the scope of the policy. One of the items of services rendered, found by the trial court, was for transportation for Mrs. Morris to and from the doctor's office each day for therapy treatments, and for Janet's transportation to and from school in the morning, noon and evening, an average of fifteen miles per day, for which Mills charged

$1.80 per day, predicated on an average of fifteen miles per day at 12¢ per mile. There is evidence that ten-miles travel per day was required to take Mrs. Morris to and from the doctor's office for therapy treatments. Thus, five miles per day at 12¢ per mile, or 60¢ per day, was required to transport Janet to and from school. Although the specific number of school days on which Janet required transportation is not definite, we take judicial notice that the public schools in Albuquerque commence either the latter part of August or the early part of September, and that schools are generally open from Monday through Friday of each week. Thus, it appears that transportation was required for Janet for 21 days in September and 21 days in October, 1960, or a total of 42 days at 60¢ per day, making a total of $25.20 for this particular item which should not be allowed. It is noted, however, that Janet had a cast on until October 8, 1960, and her condition may have required transportation to and from school, at least until October 8, 1960.

No question is raised as to the right of H. E. Mills to sue appellant and, accordingly, we do not consider the same.

The judgment of the district court is affirmed, with the exception of the amount of $25.20 for Janet Morris' transportation to and from school. It is so ordered.

NOBLE and MOISE, JJ., concur.