400 P.2d 953

Burk SCOTT, Jr., and Neva Viola Scott, Mother and Next Friend of Tommy Scott and Angela Scott, Minors, Plaintiffs-Appellees,

v.

NEW EMPIRE INSURANCE COMPANY, a corporation, Defendant-Appellant.

No. 7530.

Supreme Court of New Mexico.

April 5, 1965.

Girand, Cowan & Reese, Hobbs, for appellant.

William J. Heck, Hobbs, for appellees.

CARMODY, Chief Justice.

This appeal is from a directed verdict in favor of the plaintiff below. The parties will be referred to as they appeared in the trial court.

The real question in the case is one involving the interpretation of the meaning of the words "accidental means" in a policy of accident insurance.

Plaintiff's decedent was the insured under an accident policy issued by the defendant. On the face of the policy, in boldface type, appear the words, "ACCIDENTAL DEATH, ACCIDENTAL INJURY AND ACCIDENTAL HOSPITALIZATION POLICY." Also on the face of the policy, but in slightly less boldface type, there appears, "This policy provides indemnity for loss of life, * * * by accidental means, to the extent herein limited and provided." The same words, viz., "accidental means," also appear on the first page of the policy itself, in two places, but, insofar as we are able to determine, the policy does not define or limit the meaning of the term, nor is it mentioned thereafter.

The facts are not in dispute. The deceased, driving his car at night on a mountain road in San Juan County, Colorado, failed to make a curve, and was killed.

There was evidence that the deceased was normally a careful driver, but had been driving fast before his misfortune and had actually received a traffic ticket for speeding earlier the same night. Scott had driven the road on perhaps two prior occasions, but not in the nighttime. Sometime before the mishap, a passenger in the car, who was his foreman, complained about the speed at which the deceased was driving; nevertheless, at the time of the wreck, the passenger had dozed off and was asleep.

On proof of the policy and the above facts, the trial court directed the jury to return a verdict in favor of the plaintiff. It is here argued that this was error, because reasonable minds might very well conclude that the decedent's death was not unusual, unexpected, or beyond anticipation, and that actually it was almost the inevitable result of his own deliberate acts and therefore his death was not effected through "accidental means." Stated another way, the defendant claims that there were no "accidental means" present in the case, because the deceased was speeding over a relatively unknown, dangerous road at night and should have foreseen the consequences of his intentional acts. Plaintiff, on the contrary, maintains that under this particular policy there really is not any difference between "accidental means" and "accident," and that the minds of reasonable men could not differ in the conclusion that the deceased came to his death by accident.

Although this court has not heretofore had occasion to consider this exact problem, we are cognizant of a distinct split of authority among the various appellate courts throughout the country. See Annot., 166 A.L.R. 469, and 10 Couch on Insurance, Second, § 41:25 to § 41:38. The view expressed by some courts, and as is contended here by the defendant, is that when the policy specifies "accidental means," the immediate or proximate cause of the death must be accidental, and if death results as the natural and probable consequence of the voluntary acts of the insured, death does not occur by accidental means. Prior to 1934, this view was generally followed by the courts which passed upon the question. In that year, the Supreme Court of the United States decided Landress v. Phoenix Mutual Life Insurance Co., 291 U.S. 491, 54 S.Ct. 461, 78 L.Ed. 934, 90 A.L.R. 1382, and the majority of the court adopted the then prevailing view. However, the late Justice Cardozo dissented from the majority opinion and a part of his language bears repeating because of what has subsequently occurred. He said:

"The attempted distinction between accidental results and accidental means will plunge this branch of the law into a Serbonian Bog. 'Probably it is true to say that in the strictest sense and dealing with the region of physical nature there is no such thing as an accident.' * * * On the other hand, the

average man is convinced that there is, and so certainly is the man who takes out a policy of accident insurance. It is his reading of the policy that is to be accepted as our guide, with the help of the established rule that ambiguities and uncertainties are to be resolved against the company. * * *

"When a man has died in such a way that his death is spoken of as an accident, he has died because of an accident, and hence by accidental means. * * *

" * * * If there was no accident in the means, there was none in the result, for the two were inseparable. * * * There was an accident throughout, or there was no accident at all."

During the some thirty years since this dissent, increasing numbers of courts of last resort have followed the rationale expressed by Justice Cardozo. In fact, it is stated in 2 Richards on Insurance, 5th ed., § 216, that:

"This attempted distinction between 'accidental means' and 'accidental injury or death,' as a rationale for a decision in a given case, has not been followed by a majority of courts today. Ever since Justice Cardozo's dissent in the Landress case, bench and bar have demonstrated their distaste for such logomachy. * * * "

In Fowler v. First National Life Insurance Co. of America, 1963, 71 N.M. 364, 378 P.2d 605, we said:

"It is a cardinal principle of insurance law that a policy or contract of insurance is to be construed liberally in favor of insured or his beneficiary and strictly as against insurer. Also, words, phrases or terms will be given their ordinary meaning unless by definitions in the policy or context in which the word is used requires some other meaning be given."

There is no evidence but that the deceased was an average man, and we doubt, if he actually considered the subject at all, whether in purchasing the policy he thought that the term "accidental means" meant anything other than the ordinary meaning given thereto by any other average person. Certainly, a layman would have no comprehension that injury or death as a result of "accidental means" would be given a strict and technical interpretation.

Absent any provision in the policy defining "accidental means" as something different from that as understood by the general public, we follow the holding in Fowler v. First National Life Insurance Co. of America, supra, that words, phrases or terms will be given their ordinary meaning. We decline to adopt a strict technical or legalistic interpretation of the terms of the policy, when it was fully within the

power of the insurance company to affirmatively specify some meaning other than that understood by the average individual. This was well said in Murphy v. Travelers Ins. Co., 1942, 141 Neb. 41, 2 N.W.2d 576, when the supreme court of that state said:

"* * * The provisions of insurance policies should be considered as used in their ordinary and popular sense. If this be done, the distinction between accidental result and accidental means cannot be said to exist. It is a distinction without a difference in so far as the average lay person is concerned. *The writer of the contract has it within his power by simplicity and clarity of expression to remove all doubt. Courts cannot and ought not permit the insurer to escape liability by a resort to legal adroitness and ingenuity.* * * *" (Emphasis added.)

In the same vein, the Supreme Court of Utah, in discussing the failure to define the term "accidental means," in Carter v. Standard Acc. Ins. Co., 1925, 65 Utah 465, 238 P. 259, 275, 41 A.L.R. 1495, stated:

"So, in the instant case, it may be said: If an insured, at the time he applies for accident insurance, was made to understand that his right to recover would hinge upon such fine distinctions as the difference between 'an accidental death' and a death by 'accidental means' he would probably conclude that the purchase of such a policy would be a hazardous investment, and one which he ought not to make."

Without attempting to distinguish the individual cases cited by the defendant (which we decline to follow), nevertheless we would point out that the case of Thompson v. Prudential Ins. Co. of America, 1951, 84 Ga.App. 214, 66 S.E.2d 119, which it is claimed is a leading case distinguishing between "accidental means" and "accident" or "accidental results," is not even consistently followed in that jurisdiction. See Union Central Life Insurance Co. v. Cofer, 1961, 103 Ga.App. 355, 119 S.E.2d 281, in which the court stated:

"Nor does the fact that the speed of the automobile was in violation of law affect the coverage of the policy, *in the absence of an exception to that effect.* * * *" (Emphasis added.)

■ In our opinion, the use of the term "accidental means" in the policy here involved was synonymous with "accident."

■■ This leaves only the question of whether or not the trial court should have left to the jury a determination as to whether the death of the decedent was ef-

fected by accident. There is no testimony that the misfortune which occurred to the decedent was intentional—heedless, perhaps, but certainly not voluntarily self-inflicted, nor does the defendant so contend. In light of our holding that the terms "accidental means" and "accident" are one and the same under this policy, the minds of reasonable men could not differ in concluding that the deceased died as a result of an accident. Indeed, although defendant relates a number of acts of decedent which were out of character and unusual, nowhere does it suggest the cause or reason therefor. Under the facts here present, defendant had the burden of advancing some explanation of the conduct resulting in death which would relieve defendant of liability. Merely pointing to such conduct would not suffice. See Brenneman v. St. Paul Fire and Marine Ins. Co., 1963, 411 Pa. 409, 192 A.2d 745. Thus the issue in the court below was one of law and not of fact, and therefore, the cases of Tipton v. Clower, 1960, 67 N.M. 388, 356 P.2d 46, and Garrett v. Howden, 1963, 73 N.M. 307, 387 P.2d 874, relied upon by the defendant, are distinguishable both on the facts and the law.

Under these facts, there was no error on the part of the court in directing the verdict. The judgment will be affirmed. It is so ordered.

MOISE and COMPTON, JJ., concur.