415 P.2d 841

Walter L. MILLER, Plaintiff-Appellant,

v.

MUTUAL BENEFIT HEALTH AND ACCIDENT ASSOCIATION OF OMAHA, a/k/a Mutual of Omaha Insurance Company, Defendant-Appellee.

No. 7741.

Supreme Court of New Mexico.

June 27, 1966.

appeal is from the judgment of dismissal in favor of the defendant.

Due to the death of the plaintiff while the appeal was pending, there has been a substitution of the parties, but, for ease of understanding, we will refer to the parties as they appeared in the trial court.

Defendant, in 1926, issued and delivered to plaintiff in Oklahoma a health and accident policy providing by its terms for quarterly premiums to be paid beginning October 1, 1926. Plaintiff made timely quarterly payments from that date through September, 1962, with the exception of two premiums paid in 1938 which were late but nevertheless accepted by the defendant. During the period of the plaintiff's residence in New Mexico, such residence commencing in December, 1926, plaintiff made several claims under the policy which were paid in New Mexico.

During the quarterly period covered by the premium paid on September 1, 1962, and prior to the due date of the next premium, defendant notified plaintiff that the policy would not be renewed at the end of the quarter beginning September 1st. Following receipt of such notice, plaintiff made a formal tender of payment of the quarterly premium due December 1st, which was refused by defendant. Plaintiff now urges that the trial court erred in concluding that the defendant insurance company had the right under the terms of the policy

Rodey, Dickason, Sloan, Akin & Robb, Duane C. Gilkey, Albuquerque, for appellant.

Jones & Stiff, Theo E. Jones, Albuquerque, for appellee.

## OPINION

CARMODY, Chief Justice.

Plaintiff instituted a declaratory judgment action, seeking to have a health and accident policy continued in effect. This

to refuse to accept the premium tendered by plaintiff.

The contentions of the parties center around three provisions of this policy: Standard Provision 16, on the fifth page of the policy—

"The Association may cancel this policy at any time by written notice delivered to the Insured or mailed to his last address as shown by the records of the Association, together with cash or the Association's check for the unearned portion of the premiums actually paid by the Insured, and such cancellation shall be without prejudice to any claim originating prior thereto."

Additional Provision (c), also on the fifth page—

"The copy of the application indorsed hereon is hereby made a part of this contract and this policy is issued in consideration of the statements made by the Insured in the application and the payment in advance of Ten ($10.00) Dollars as first payment; and the payment in advance of Seven ($7.50) Dollars and Fifty Cents quarterly thereafter, beginning with Oct. 1st, 1926, is required to keep this policy in continuous effect. If any such dues be unpaid at the office of the Association in Omaha, Nebraska, this policy shall terminate on the day such payment is due. The mailing of notice to the Insured at least fifteen days prior to the date they are due shall constitute legal notice of dues.

"The acceptance of any premium on this policy shall be optional with the Association, and should the premium provided for herein be insufficient to meet the requirements of this policy, the Association may call for the difference as required."

and finally, on the back of the policy, a glued-on endorsement labeled in large type "NON-CANCELLABLE ENDORSEMENT" which reads:

"The Association cannot cancel this policy during any period for which the premium has been paid.

"It is further understood and agreed that this policy cannot be cancelled by the Association during any period of disability of the Insured."

There is no claim that plaintiff was disabled at the time of defendant's notification of non-renewal.

Although argument has been made by both parties with respect to what law should be applicable to the construction of the contract, we do not reach this issue because the policy was issued and delivered in Oklahoma, thereby making it an Oklahoma contract, Merriman v. Harter, 1955, 59 N.M. 154, 280 P.2d 1045; and Spiess v. United Services Life Ins. Co. (10th Cir. 1965), 348 F.2d 275, and the reinstatement

of the policy in 1938 merely had the effect of continuing the original Oklahoma contract, In re White's Estate, 1939, 43 N.M. 202, 89 P.2d 36; Missouri State Life Ins. Co. v. Jensen, 1929, 139 Okl. 130, 281 P. 561.

Neither the Oklahoma Supreme Court nor the New Mexico Supreme Court has previously ruled on the exact question here, and the only Oklahoma precedent cited to us is Smith v. Mutual Benefit Health & Acc. Ass'n (W.D.Okl.1933), 10 F.Supp. 110. That case involved an interpretation of an additional provision (c) and a non-cancellable endorsement identical to those in the present case. However, the question there before the court was the construction of the second portion of the non-cancellable endorsement, concerning cancellation during the disability of the insured. The court said the refusal of the insurer to accept premiums on the due date did not interfere with the continuation of the policy, the disability of the insured having begun before that time. The court did say, as dicta, that the company would have the right under the policy to refuse to accept a premium; however, this was not the holding of the case, and, at best, is only the opinion of one judge as to what the Oklahoma courts would do if confronted with the problem. Since there is no conflict in any pronouncement of the law between this court and the Supreme Court of Oklahoma,

there really is no question of conflict of laws here present.

These particular provisions are no strangers to the courts, similar policies having been construed in a number of cases with a resulting split of authority. See, e. g., Williams v. Mutual of Omaha (4th Cir. 1962), 297 F.2d 876; Mutual Benefit Health & Acc. Ass'n v. Cohen (8th Cir.1952), 194 F.2d 232, cert. denied 343 U. S. 965, 72 S. Ct. 1059, 96 L.Ed. 1362; Rabb v. Mutual Benefit Health & Acc. Ass'n, 1958, 98 Ga. App. 193, 105 S.E.2d 396; Mutual Benefit Health & Acc. Ass'n v. Caver, 1934, 169 Miss. 554, 152 So. 897; and Ray v. Mutual Benefit Health & Acc. Ass'n (Mo.App. 1949), 220 S.W.2d 622, holding for the insurance company, and De Land v. Fidelity Health & Acc. Mut. Ins. Co., 1949, 325 Mich. 9, 37 N.W.2d 693; Holmstrom v. Mutual Benefit Health & Acc. Ass'n, 1961, 139 Mont. 426, 364 P.2d 1065; Harwell v. Mutual Benefit Health & Acc. Ass'n, 1945, 207 S.C. 150, 35 S.E.2d 160, 161 A.L.R. 183; and Burk v. Mutual Benefit Health & Acc. Ass'n of Omaha (Tenn.App.1963), 388 S. W.2d 628, holding for the insured.

■ This court has uniformly held that a policy which may reasonably be construed in more than one way should be construed liberally in favor of the insured, Gray v. International Service Ins. Co., 1963, 73 N.M. 158, 386 P.2d 249; Erwin v. United Benefit Life Ins. Co., 1962, 70 N.M. 138,

.371 P.2d 791; that is, if there are terms of doubtful meaning or ambiguity, the doubt must be resolved in favor of the insured, Morris v. Fireman's Fund Ins. Co., 1963, 72 N.M. 395, 384 P.2d 465. However, it is also well established that where no ambiguity or uncertainty appears in the policy no place is found for operation of the rule, Gray v. International Service Ins. Co., supra.

Plaintiff contends that the non-cancellable endorsement affixed to the policy had the effect of removing from the defendant the right to terminate the policy as long as the appellant made timely tender of premium payments, that the language of the endorsement nullified contrary and conflicting language in the policy itself and that the policy provisions, when read in light of the endorsement, are ambiguous, and the ambiguity must be construed in favor of the plaintiff. The defendant on the other hand urges that the terms of the policy are clear and unambiguous, and therefore that no construction of the language is called for. Defendant further claims in effect that the non-cancellable endorsement merely precludes the company from cancelling the policy during any period for which the company has accepted the premium, thus "reading out" Standard Provision 16, but leaving intact the provision permitting the company to reject any future premium when tendered. Thus .the issue is presented: is the clause of the additional provision (c) reading "The acceptance of any premium on this policy shall be optional with the association * *," inconsistent with the words of the endorsement, "NON-CANCELLABLE ENDORSEMENT The Association cannot cancel this policy during any period for which the premium has been paid."?

This court has previously held that words in a contract of insurance are to be given their ordinary meaning, Fowler v. First National Life Ins. Co. of America, 1963, 71 N.M. 364, 378 P.2d 605, and that the court will decline to adopt a technical or legalistic interpretation of the terms of the policy when it was fully within the power of the insurance company to affirmatively specify some meaning other than that understood by the average individual, Scott v. New Empire Ins. Co., 1965, 75 N.M. 81, 400 P.2d 953. The test is not what the insurer intended its words to mean but what a reasonable person in the position of the insured would have understood them to mean, Arenson v. National Auto. & Cas. Ins. Co., 1955, 45 Cal.2d 81, 286 P.2d 816; Morgan v. Greater New York Taxpayers Mut. Ins. Ass'n, 1953, 305 N.Y. 243, 112 N.E.2d 273; Thompson v. Ezzell, 1963, 61 Wash.2d 685, 379 P.2d 983; Wilson v. Hawkeye Cas. Co., 1950, 67 Wyo. 141, 215 P.2d 867.

Conceding that there is a distinction between "cancellation" and a failure

to renew, the question is still whether, in view of the character of this policy, both as to the manner of its printing and its provisions, the insured, as a reasonable person, could attach only the insurer's meaning to the policy, that is, that the insurer could terminate the policy at the end of any quarterly period by refusing to accept further tendered premiums. We think not. We do not think it unreasonable for an average policyholder to consider the cancellation of a policy and the refusal to renew a policy to be the same thing. Compare Minnesota Mutual Life Ins. Co. v. Cost (10th Cir.1934), 72 F.2d 519, where the court said:

. " * * * precisely speaking, life policies are not cancelled or forfeited when they lapse for non-payment of premiums. The legislature used those words as they are frequently used, by laymen, courts, and text-writers, to include the result which follows nonpayment of premiums."

See also National Life & Acc. Ins. Co. v. Chastain, 1933, 46 Ga.App. 842, 169 S.E. 380; De Land v. Fidelity Health & Acc. Mut. Ins. Co., supra; and Schultz v. Benefit Ass'n of Ry. Employees of Chicago, Ill., 1935, 175 S.C. 182, 178 S.E. 867.

The phrase from Additional Provision (c) of this policy, " * * * payment in advance of Seven ($7.50) Dollars and Fifty Cents quarterly thereafter, beginning with Oct. 1st, 1926, is required to keep this policy in continuous effect," also lends credence to the reasonability of the insured's interpretation of this policy, held by him for 36 years. Further, as stated in a concurring opinion in Burk v. Mutual Benefit Health & Acc. Ass'n of Omaha, supra:

"Since lawyers and Courts disagree as to whether or not this language is of doubtful meaning, it seems obvious that the average layman might be easily misled by it whether intentionally so or not."

■ Defendant suggests that we read the provisions in question in a different order than they appear in the policy, first Additional Provision (c), then Standard Provision 16, then the non-cancellable endorsement, claiming that this shuffled order results in a logical sequence free from ambiguity. It does not suggest, however, that this is the way an average policyholder would read them. If such rearranged order would clarify the policy, the company had it within its power to so write the policy. In Scott v. New Empire Ins. Co., supra, we quoted from Murphy v. Travelers Ins. Co., 1942, 141 Neb. 41, 2 N.W.2d 576, as follows:

"The writer of the contract has it within his power by simplicity and clarity of expression to remove all doubt. Courts cannot and ought not permit the insurer to escape liability by a resort to legal adroitness and ingenuity."

Our rule that, when a policy may be reasonably construed in more than one way it should be construed in favor of the policyholder, necessitates reversal of the trial court's ruling. The judgment will be reversed and the cause remanded to the district court with directions to proceed in a manner not inconsistent herewith. It is so ordered.

CHAVEZ and MOISE, JJ., concur.