The **HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY, a Stock Insurance Company,** Appellant,

v.

**SCHWARTZMAN PACKING COMPANY, a New Mexico Corporation, Appellee.**

No. 9990.

United States Court of Appeals, Tenth Circuit.

April 6, 1970.

William C. Briggs, Albuquerque, N. M. (Robert M. St. John and Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, N. M., were with him on the brief), for appellant.

James A. Parker, Albuquerque, N. M. (George T. Harris, Jr., and Modrall, Seymour, Sperling, Roehl & Harris, Albuquerque, N. M., were with him on the brief), for appellee.

Before MURRAH, Chief Judge, and PICKETT and HOLLOWAY, Circuit Judges.

HOLLOWAY, Circuit Judge.

This appeal involves an action on an insurance policy issued by appellant Hartford Steam Boiler Inspection and Insurance Company (Hartford) to a New Mexico corporation, appellee Schwartzman Packing Company (Schwartzman) which was engaged in the meat packing business in New Mexico. Schwartzman recovered judgment for $90,707.69, which was the undisputed amount of property damage and loss from interference with the company's business resulting from an explosion in a tank in the steam boiler system at the packing plant, just south of Albuquerque. The action originated in the New Mexico courts but was removed on diversity grounds. Hartford appeals from the adverse judgment entered on a jury verdict.

The Schwartzman plant had three boilers which produced steam that was piped into the rendering plant. From the main pipe or "header" the steam was piped into jackets surrounding three cookers that were used to cook down the inedible portions of the animals. At the lower part of each of the jackets the condensate, water formed from the steam, was eliminated by impulse traps operated by differential pressure. The traps allowed the accumulated condensate together with some steam to be discharged from one side of the trap and the remaining steam stayed under pressure in the line on the other. The condensate and steam eliminated by the traps under the three cookers then flowed into a single condensate line and then into a single tank, which was the place where the explosion occurred.

This tank was approximately three feet in diameter and seven or eight feet in height. The steam going into the tank was under very little pressure. The steam which did not condense in the tank was vented through an opening in the top of the tank, where there was no pressure and a pipe from this opening then led down to discharge on the ground; there was no pressure on the tank at any time. The condensate collected in the bottom portion of the tank. From one side of the bottom of the tank a line led off to a high pressure pump. The pump was operated periodically to pump the collected condensate back to the boilers. For this pump to operate properly it was necessary for the steam to have been eliminated before the condensate flowed into the pump.

The explosion occurred at the tank, described above, in June, 1966, causing losses in the undisputed amounts by property damage and interference with operation of the plant. It is also undisputed that a Hartford policy issued in June, 1964, was in force at the time of the explosion. Among other things it insured against loss by property damage and by prevention of business operations. The section of the policy dealing with boilers and fired vessels contained provisions set out in the margin defining the covered "Object." [1] This controversy centers primarily around the provision bringing within the covered "Object" " * * * any piping on the premises of the assured, or between the parts of such premises, with valves, fittings, traps and separators thereon * * * " Schwartzman contends that the vessel in question as it functioned was a condensate trap or separator or pipe or fitting within the definition of "Object." Hartford argues that the vessel was a condensate return tank not within the coverage, having no function as a trap or separator. These contentions made up the question submitted to the jury, which found for Schwartzman. Hartford's appeal seeks reversal and a new trial on three grounds, to which we now turn.

First Hartford argues that the policy provision was clear and unambiguous and that the trial court erred in admitting parol and extrinsic evidence without finding that the policy was ambiguous. The

---

1. "Section A BOILERS, FIRED VESSELS AND ELECTRIC STEAM GENERATORS—Broad Coverage
DEFINITION OF OBJECT. 'Object' shall mean any complete vessel designated and described in the Schedule and shall also include 1. any steel economizer used solely with such vessel, 2. any indirect water heater used for hot water supply service which is directly in the water circulating system of such vessel and which does not form a part of a water storage tank, and 3. *any piping on the premises of the Assured, or between parts of said premises, with valves, fittings, traps and separators thereon, which contains steam* *or condensate thereof, generated in whole or in part in such vessel, and any feedwater piping between such vessel and its feed pump or injector;* but Object shall not include (a) any part of such vessel or piping which does not contain water or steam; (b) any reciprocating or rotating machine; (c) any electrical apparatus; (d) any piping not on the premises of the Assured, used to supply any premises not owned by, leased by or operated under the control of the Assured; nor (e) any other piping, any radiator, convector, coil, vessel or apparatus except as included in Sections 1, 2 and 3 above." (Emphasis added)

proof objected to was testimony of the insurance broker who was agent for Hartford, two prior insurance policies of Hartford issued to Schwartzman, a letter from Hartford to its agents describing policy changes and a letter from Hartford to Schwartzman giving a breakdown of premiums and showing deleted items such as air tanks, pneumatic tanks, rendering tanks and a jacketed cooker. Hartford objected to all such proof on the ground that the policy in question was said to be clear and unambiguous so that the parol and extrinsic evidence could not come in.

■ The trial court heard arguments on the objections and admitted the parol evidence for light it might throw on the meaning of the policy. Hartford complains first that the record shows no formal finding of an ambiguity. However no such formal finding is required by the authorities relied on. We view the record as showing sufficiently that the trial court carefully considered the objections and concluded that he should admit the evidence because of the uncertainty of the policy terms. The ruling that uncertainty existed as to the meaning of the policy as applied to these facts was for the court,[2] and we agree with the trial court's view that uncertainty existed as to the terms involved and the coverage intended.

■ The exhibits showed that Hartford's earlier policies had used general definitions, as in connection with boiler piping, and then made specific exclusions of items not covered, such as any receiver-separator, accumulators and the like. Also they showed specific deletions requested by Schwartzman. In short the proof tended to show the pattern of how the parties had used more general definitions and specific exclusions in connection with the boilers and the piping apparatus.[3] We agree with the trial court that the evidence was relevant and admissible un-

2. Jernigan v. New Amsterdam Casualty Co., 69 N.M. 336, 367 P.2d 519; Harp v. Gourley, 68 N.M. 162, 359 P.2d 942; Rigsby v. Mutual of New York, 331 F.2d 353 (10th Cir.).

3. Schwartzman introduced the testimony of the insurance broker who obtained the Hartford policies. His testimony and the related documents objected to cast light on the meaning of the policy at issue by illustrating how the coverage afforded Schwartzman's plant was altered on several occasions. Under both the 1958 and 1961 policies the definition of "Object" included many kinds of piping and valves, fittings, traps and separators on such piping but specifically stated that "[o]bject shall not include any other vessel or apparatus utilizing steam or vapor, nor any exhaust piping transmitting steam to the atmosphere, nor any deaerator, any feedwater heater, any receiver-separator, any receiver, any accumulator, nor any other tank or other vessel." The language of this exclusion was' relevant in construing the 1964 policy because this latter policy had no such exclusion. The letter Hartford sent to its agents in July, 1961, notified them that a new boiler and machinery insurance policy was available.

The insurance broker also testified that Hartford's agent for the State of New Mexico told him at that time that the new coverage was broader and said, "We take all [the boilers, piping and tanks under pressure] and we group them altogether into one category and it doesn't make any difference if we don't list them all. If we have made a mistake in our inspection and we omitted something that falls in that group category, it is still covered under the blanket coverage and we will pick it up on the next policy." Although the record is unclear, it appears that Schwartzman chose the broader coverage.

In November, 1962, Schwartzman requested that Hartford furnish a list of what was covered by the policy and then certain items were deleted, thereby reducing the premium. This list of deleted items was also one of the exhibits objected to. The insurance broker testified that although the vessel that exploded was not specifically enumerated on the list of items to be deleted, all vessels which were classed as "unfired pressure vessels" were deleted from the blanket coverage, whether listed or not. However, the broker later agreed that only those vessels which were "metal unfired pressure vessels which are subject to vacuum or internal pressure other than static pressure of contents" were intended to be deleted from coverage.

der the circumstances to help the jury decide whether the facts brought this vessel, as it functioned, within the coverage intended.[4]

■ Secondly Hartford contends that the trial court erred in one portion of the instructions. In substance the challenged instruction was that where there is a choice of interpretation of the words used, the policy should be construed in favor of the insured and in favor of coverage, and also that where more than one reasonable interpretation is possible the policy should be strictly construed against the company preparing the policy forms. Again Hartford's position rests on its argument that the policy is clear and unambiguous—a contention with which we do not agree. We conclude that there was uncertainty as to the coverage intended and that the charge properly followed familiar principles of New Mexico law.[5] Moreover, where there is a mixed question of fact and law as the trial court was submitting to the jury here, it is proper to guide the jury by reference to these principles.[6] We conclude that the instructions were proper and not prejudicial to Hartford.

■ Third it is argued that the trial court improperly excluded proof of the meaning of the terms "trap" and "separator." The testimony offered was that of experts, one a mechanical engineer and the other a specialist with practical experience in the boiler industry. This testimony would have described traps as having moving parts and characteristics distinct from the vessel in question. It would also have described a separator as removing droplets of water by a method of operation different from the vessel in question. However, no proof was offered to show agreement by Schwartzman to contract with reference to the technical meaning of the terms testified to by experts, and no showing was made that a reasonable person in the position of Schwartzman would so understand them. In such circumstances the insurer may not resort to such special definitions used by experts and the policy terms are construed according to their plain and ordinary meaning.[7] On this record the trial court properly rejected the proof of the special meanings offered by the experts and instructed the jury to decide what a reasonable person in the position of the insured would understand the language to mean. For these reasons we do not agree with appellant's contentions about such expert testimony and related expert testimony which was excluded, and we do not agree with appellant's objection to the instruction properly given.

Affirmed.

4. See Jernigan v. New Amsterdam Casualty Co., supra, 367 P.2d at 523, 524; Pearl Assurance Co. v. School Dist. No. 1, 212 F.2d 778, 781 (10th Cir.); Operators Oil Co. v. Barbre, 65 F.2d 857, 859–860 (10th Cir.); Queen Insurance Co. of America v. Meyer Milling Co., 43 F.2d 885, 887–888 (8th Cir.); and Restatement of Contracts, § 242.

5. See Miller v. Mutual Benefit Health & Accident Association of Omaha, 76 N.M. 455, 415 P.2d 841, 843; Scott v. New Empire Insurance Co., 75 N.M. 81, 400 P.2d 953, 955; and Morris v. Fireman's Fund Insurance Co., 72 N.M. 395, 384 P.2d 465, 468.

6. See, e. g., Metropolitan Life Insurance Co. v. Bovello, 56 App.D.C. 275, 12 F.2d 810, 813; and Guardian Life Insurance Company of America v. Kortz, 109 Colo. 331, 125 P.2d 640, 644. Where there is a pure issue of law in the interpretation of a contract, reference to such rules in the instructions has been disapproved. Postler v. Travelers' Insurance Company, 173 Cal. 1, 158 P. 1022, 1024, overruled on another issue. Zuckerman v. Underwriters at Lloyd's, London, 42 Cal.2d 460, 267 P.2d 777, 785.

7. See Morton v. Great American Insurance Co., 77 N.M. 35, 419 P.2d 239, 241; Scott v. New Empire Insurance Co., supra, 75 N.M. 81, 400 P.2d 955; and Reliance Insurance Co. v. Jones, 296 F.2d 71, 73 (10th Cir.).