Gary BRASHAR, Plaintiff,

v.

MOBIL OIL CORPORATION and
Mobil Producing Texas and New
Mexico, Inc., Defendants,

and

MOBIL OIL CORPORATION and Mobil
Producing Texas and New Mexico, Inc.,
Defendants and Third-Party Plaintiffs,

v.

George E. COLEMAN, Coleman Drilling
Company and Reliance Insurance
Company, Third-Party Defendants.

Civ. No. 83 1226BB.

United States District Court,
D. New Mexico.

Dec. 19, 1984.

David Pittard, Briones & Pittard, P.A.,
Farmington, N.M., Alfred L. Green, Jr.,
Shaffer, Butt, Thornton & Baehr, P.C., Albuquerque, N.M., for plaintiff.

Rodey, Dickason, Sloan, Akin & Robb,
P.A., Jackson G. Akin, James O. Browning,
Albuquerque, N.M., for defendants.

Shaffer, Butt, Thornton & Baehr, Paul Butt, Alfred L. Green, Jr., Albuquerque, N.M., for Reliance Ins. Co.

Tansey, Rosebrough, Roberts & Gerding, PC, Richard L. Gerding, Farmington, N.M., for third-party defendants Coleman & Coleman Drilling Co.

## MEMORANDUM OPINION AND ORDER

BALDOCK, District Judge.

THIS MATTER comes on for consideration of the Motion for Partial Summary Judgment against Coleman Drilling Company submitted by defendants and third-party plaintiffs Mobil Oil Corporation and Mobil Producing Texas and New Mexico, Inc., filed May 30, 1984. The court, having considered the accompanying memoranda and the relevant law, and otherwise being advised fully in the premises, finds that the motion is well taken in part and should be granted in part.

George E. Coleman, on behalf of Coleman Drilling Company and Mobil Producing Texas and New Mexico, Inc. entered into a written drilling contract dated January 9, 1981, and amended on May 26, 1981. According to the terms of the written contract, Coleman, in pertinent part, agreed to the following: to indemnify and hold harmless Mobil for claims arising from personal injury to Coleman's employees "growing out of, incident to, or resulting directly or indirectly from the work to be performed by contractor hereunder." ¶ 18 of the January 9, 1981, drilling contract. Coleman agreed to carry employer's liability insurance (¶ 18 of the drilling contract, ¶ 16 of Exhibit A of the contract, and the Minimum Insurance Requirement schedule which is Exhibit D of the contract), and to include Mobil as an additional insured under the policy (Minimum Insurance Requirement schedule). Coleman also agreed to insure its contracts, including the hold harmless agreement. Exhibit A of the drilling contract, ¶ 16. Coleman agreed to reimburse Mobil for expenses and attorney's fees in investigating or defending any claims. ¶ 18 of the drilling contract.

By its motion, Mobil seeks (1) a declaration that the contract provisions are valid and enforceable, (2) that Coleman breached certain agreements, and (3) that Coleman is, therefore, liable either on the contract or for breach of contract for any judgment obtained by the plaintiff against defendant Mobil and for any expenses and attorney's fees incurred in defending against plaintiff's claims and in prosecuting its third-party action. It does this via Rule 56 of the Federal Rules Civil Procedure. There is no doubt, however, that summary judgment is appropriate when there is a request for declaratory relief, if there is no genuine factual dispute. 6 (Part 2) Moores Federal Practice § 5617 [19], at 56–841 (2d ed. 1948). It is appropriate, therefore, to determine who is entitled to judgment as a matter of law as long as there is no genuine issue of material fact.

Before considering any other matters raised by Mobil, it is necessary to determine whether the drilling contract between Mobil and Coleman is valid and enforceable. There is no question of fact that Coleman entered into a contract with Mobil in 1981 covering certain wells to be drilled in the State of Colorado. The fact that a contract was formed is not disputed. The primary matter that is in dispute pertains to when the contract was formed and where it was formed.

Because this is a contract dispute in a diversity case, this court is bound by the dictates of *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny, and must apply whatever law would be applied by the courts of New Mexico. This, of course, includes the conflicts law of New Mexico. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Before the court can apply New Mexico conflicts law, it must determine whether the contract is a New Mexico contract or a Texas contract. If it is a New Mexico contract, then the court will apply pertinent New Mexico substantive law. If it is a Texas contract, then it

will apply New Mexico conflict law. New Mexico follows the traditional conflicts of law analysis of the Restatement of Conflicts of Law (1934). *See, e.g., Miller v. Mutual Benefit Health & Acc. Association,* 76 N.M. 455, 415 P.2d 841 (1966); *Eichel v. Goode, Inc.,* 101 N.M. 246, 680 P.2d 627 (Ct.App.1984).

To determine what law is applicable to contracts, it is necessary to establish where the contract is made. According to New Mexico law, a contract is made "at the time when the last act necessary for its formation is done, and at the place where the final act is done." *Merriman v. Harter,* 59 N.M. 154, 158, 280 P.2d 1045 (1955). New Mexico conflicts law indicates that a contract shall be interpreted in reference to the laws of the place where the final act was performed which created the contract. *Miller v. Mutual Benefit Health,* 76 N.M. at 457, 415 P.2d 841.

The evidence supports the conclusion that the drilling contract was executed in the State of Texas. Mobil prepared the contract and mailed it to Coleman in New Mexico. Coleman signed the contract, mailed it back to Mobil in Texas where it was signed by Glen W. Barb in Midland, Texas, on behalf of Mobil Producing Texas and New Mexico, Inc. A copy of the fully executed contract was returned to Coleman. The issue, therefore, can be reduced further to whether the last signature on the contract was the last act necessary for its formation.

Coleman argues that the last act necessary for the formation of the contract was his signing the contract in New Mexico. The drilling contract itself specifically required that it be executed by a representative of Mobil. ¶ 20 of the January 9 drilling contract. Under traditional contract law, if the contracting parties do not intend a contract to become effective unless and until reduced to a signed, integrated writing, that interpretation will be given effect, and the contract will not bind either party until the writing is executed. The contract, therefore, was not binding on either party until Mobil countersigned the contract, which it did in Texas.

The drilling contract has a signature line for both parties. When Coleman received the contract, no signatures appeared on the contract. Mobil made its signing the contract a condition precedent to its being bound. There is little New Mexico case law directly on point, but it appears that New Mexico has adopted the general proposition that a written contract is not consummated until executed by the last signatory. *Transradio Press Service, Inc. v. Whitmore,* 47 N.M. 95, 99, 137 P.2d 309 (1943); *Cessna Finance Corp. v. Mesilla Valley Flying Service,* 81 N.M. 10, 13, 462 P.2d 144 (1969), *cert. denied,* 397 U.S. 1076, 90 S.Ct. 1521, 25 L.Ed.2d 811 (1970); *Alexander Film Co. v. Pierce,* 46 N.M. 110, 112, 121 P.2d 940 (1942). It is apparent, therefore, that the cover letter and the terms of the drilling contract indicate a clear intention that the contract would not be consummated until all signatures appeared on the contract. Because the last act in executing the drilling contract took place in Midland, Texas, New Mexico choice of law rules dictate that Texas law governs the validity of the indemnification clause.

Although there does not appear to be any New Mexico law on this point, it is likely that New Mexico has adopted the "public policy" exception as provided in the First Restatement of Conflicts. Section 612 of the Restatement of the Law of Conflicts of Laws (1934) states: "No action can be maintained upon a cause of action created in another state the enforcement of which is contrary to the strong public policy of the forum." New Mexico enacted 56–7–2 in 1971 which states that an agreement which purports to indemnify the indemnitee for damages "arising from the sole or concurrent negligence of the indemnitee" is void and unenforceable. This simply means that Mobil cannot contract away liability for its own negligence, or its own percentage of negligence. Thus, under New Mexico law, Coleman can indemnify Mobil only for Coleman's percentage of negligence. The indemnity agreement is

enforceable to that extent under New Mexico law. Coleman has agreed to this interpretation in its Memorandum in Opposition to Third-Party Plaintiff Mobil's Motion for Partial Summary Judgment, at 12. *See also Guitard v. Gulf Oil Co.*, 100 N.M. 358, 362, 670 P.2d 969 (Ct.App.1983). Furthermore, the statutory prohibition against indemnification does not affect the validity of any insurance contract. 56–7–2(A)(4) N.M.S.A. (1978). Thus, in New Mexico, one may provide for indemnification through insurance.

A careful analysis of Texas law fails to indicate any conflict with New Mexico public policy. Like New Mexico's statute, the Texas law declares indemnity provisions in oil and gas agreements, where there is negligence attributable to the indemnitee, void and unenforceable as against Texas public policy. Texas Revised Statutes Annotated, Art. 2212b (Vernons Supp.1984). Contractual indemnity is permitted, however, if covered by liability insurance, and then only to the limits of the insurance. Art. 2212b, § 4(c). *See also Gulf Offshore Co. v. Mobil Oil Co.*, 594 S.W.2d 496, 505 (Texas Ct. of Civ.App.1979). The same result may be achieved under New Mexico law through an insurance contract. 56–7–2(A)(4) N.M.S.A. (1978). Application of Texas law to this case, therefore, would not be contrary to New Mexico public policy.

Applying Texas law to the drilling contract, it is clear that the indemnification provision is valid if it was covered by liability insurance. If Coleman indemnified through insurance, the indemnification is enforceable up to the amount provided by the insurance policy. The indemnification clause may properly indemnify Mobil for Coleman's negligence and may indemnify Mobil for its own negligence to the extent of coverage provided by insurance. If the indemnity agreement is not supported by liability insurance, the agreement is void and unenforceable as to the negligence attributable to Mobil.

I am unable to determine from the pleadings whether or not the indemnification agreement is supported by insurance coverage. It is clear, however, that Coleman agreed to provide insurance to cover the indemnity agreement. *See* the Minimum Insurance Requirement schedule attached to the drilling contract as Exhibit D, and ¶ 18 of the drilling contract. If Coleman failed to provide such insurance, he would be liable for resulting injury to Mobil for breaching its promise to provide such insurance.

Additionally, I am unable to determine from the drilling contract whether Coleman intended to agree to pay for Mobil's attorney's fees and costs expended in enforcing the indemnity agreement. Therefore, I reserve judgment on that matter.

NOW, THEREFORE, IT IS ORDERED that the Motion for Partial Summary Judgment against Coleman Drilling Co. submitted by the defendants and third-party plaintiffs Mobil Oil Corp. and Mobil Producing Texas and New Mexico, Inc. is granted in part and denied in part.