## WONNACOTT v. DENVER & RIO GRANDE WESTERN R. CO.

### No. 4142.

United States Court of Appeals
Tenth Circuit.
March 3, 1951.

Dwight L. King, Salt Lake City, Utah (Calvin W. Rawlings, Harold E. Wallace, Parnell Black, Brigham E. Roberts, and Wayne L. Black, all of Salt Lake City, Utah, on the brief), for appellant.

Grant H. Bagley, Salt Lake City, Utah (W. Q. Van Cott, S. N. Cornwall, and Dennis McCarthy, all of Salt Lake City, Utah, on the brief), for appellee.

Before BRATTON, HUXMAN and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

During part of the time hereinafter referred to, the Denver and Rio Grande Western Railroad system was operated by trustees appointed for that purpose and during part of the time it was operated by the railroad company, but the change in operation has no decisive bearing here; and in the interest of brevity, reference will be made to the company as though it operated the railroad throughout the entire period.

James Edward Wonnacott was an employee of the company at Salt Lake City, Utah, and he worked as a brakeman. While employed in that capacity, he was inducted into the Marine Corps and was discharged on May 2, 1946. On June 10 or 11, 1946, he made application to the company in Salt Lake City for restoration to his former position. On August 30, 1948, he was reemployed as a brakeman and he has continued to work since that date. Invoking the substantive and procedural provisions of section 8 of the Selective Training and Service Act, as amended, 50 U.S.C.A.Appendix, § 308, he instituted this action

against the company to recover compensation for loss of wages between the time of making the application for restoration and the time of his re-employment. The company defended on the ground that Wonnacott was not in physical condition to perform the duties of the position. The jury returned a verdict for the defendant, judgment was entered accordingly, and plaintiff appealed.

The only contention urged for reversal of the judgment is that the court erred in its instruction to the jury in respect to the effect of a request for leave of absence. But it is unnecessary to explore the question. For the reason presently outlined, we think that the court should have directed a verdict for the defendant. And it is well settled that an appellant may not be heard to complain of prejudicial errors in the instructions where his adversary was entitled to a directed verdict. That rule is merely the application of a recognized segment of the familiar doctrine that errors which could not have prejudiced the unsuccessful party give no right to a reversal of the judgment. Hamilton Iron & Steel Co. v. Groveland Mining Co., 6 Cir., 233 F. 388; Weidenfeld v. Pacific Improvement Co., 2 Cir., 43 F.2d 817; Nalbantian v. United States, 7 Cir., 54 F.2d 63; General Securities Corp. v. City of Homewood, 5 Cir., 67 F.2d 513; Jones v. Mutual Life Insurance Co. of New York, 8 Cir., 113 F.2d 873.

A casual reading of the statute, supra, makes it plain that plaintiff did not have the right to be restored to the position of brakeman unless he was still qualified to perform the duties of such position. At the conclusion of all the evidence, the defendant moved for a directed verdict in its favor on the ground that at the time of making the application for restoration plaintiff was given a physical examination and was found to be not physically qualified to perform the duties of a railroad brakeman; that he was given another examination in November, 1946, and again was found to be not physically qualified to discharge the duties of the position; and that he did not again seek employment until August, 1948, at which time he was employed as a brakeman and had continued in such employment since that time. The court reserved decision on the motion and submitted the case to the jury. Plaintiff suffered a sprained ankle while a member of the Marine Corps but he was not in military combat. He was given a physical examination at the time of discharge from the service and the report stated that he had a tachycardia condition which means abnormal rapidity of the heart action. After submitting his application for restoration, plaintiff reported to an examining physician of the defendant in Salt Lake City for a physical examination to determine his fitness to perform the duties of brakeman. He had blood pressure of 170 systolic and 80 diastolic. While the physician failed to find anything wrong with his ankle or his heart, plaintiff stated in giving his history that he sustained a fracture of the ankle while in the Marine Corps, that the ankle still pained him, and that he was discharged from military service because of heart trouble. In view of the history given, and in view of the strenuous work required of a railroad brakeman, it was the conclusion of the physician that it was unsafe for plaintiff to undertake that work; and he advised the company to that effect. Soon after such examination and rejection, plaintiff went to California and there sought and obtained from the Veterans Administration disability compensation based upon his physical condition. The compensation was computed upon disability of thirty per cent. Plaintiff later sought to have the compensation increased, and he requested the defendant to write him a letter to be used in that connection. Early in July, the defendant requested plaintiff to report for re-examination or further examination. Instead of doing so, he wrote that he was undergoing physical examination by government physicians and would continue doing so until sometime in August. Late in August he wrote the defendant that as the result of his examination by the Veterans Administration and the Naval Medical Board, he had been found physically unfit, due to injuries received in the service; that due to his disabilities he had been advised against railroading; that he was

told he would be physically fit after a period of time; and that he was further advised to go to school in the meantime. He further stated in the letter that he planned to attend a school in Kansas City and inquired about transportation from Salt Lake City to Kansas City. He did attend the school; and in November, 1946, following his attendance at the school, he returned to Salt Lake City and was given another physical examination by a different physician. His blood pressure was 170 systolic and 80 diastolic, and his pulse rate was 120. He stated to the physician that he suffered a fractured ankle while in the service, that his ankle still pained him at times, and that he was drawing military service compensation of thirty per cent because of neurocirculatory asthenia and because of the condition of the ankle. The physician noticed a slight tenderness on the front part of his ankle, and found that his hands were cold and clammy and that he had a tremor or shaking of his outstretched fingers. It was the conclusion of the physician that he showed instability of the nervous and emotional systems. It was the further conclusion of the physician that his condition made it unsafe for him to handle trains. And he advised the defendant to that effect. Plaintiff was then sent to Denver for further examination by the chief surgeon of the defendant or under his direction. The chief surgeon caused plaintiff to be examined by a physician who specialized in nervous and mental diseases. In giving his history to the specialist, plaintiff stated that he sustained an injury of the ankle while in the service; that he had malaria while in the South Pacific but was disabled only for a day or two at a time; that at first he had chills for two weeks but they gradually became more infrequent; that he had one attack after returning to this country; that it lasted only one day; that after being discharged he was examined by the Veterans Administration; that the Veterans Administration advised him he had a war neurosis condition; and that the Administration wanted him to go to a hospital. And he further stated that at times he was depressed which he believed to be due to anxiety about his job with the defendant.

His hands and feet were cold; the palms of his hands were soaked with moisture; and he was quite depressed, considerably confused, and slow in his activities. It was the conclusion of the specialist that he was a victim of war neurosis and should not be in the employ of the defendant, and he so advised the defendant. While testifying as a witness in the case, the specialist expressed the opinion that plaintiff was suffering from such neurosis at the time he applied for re-employment in June, 1946. Immediately after that examination and rejection by the specialist, plaintiff returned to California. In March, 1947, he passed a physical examination for the position of railroad brakeman in the Naval Dry Docks at San Pedro, was employed, continued in that employment until July, 1948, and received the highest efficiency rating given by the Navy for service of that kind. Shortly after termination of his employment as brakeman in the Naval Dry Docks, plaintiff again went to Salt Lake City, and talked with the trainmaster of the defendant about being restored to his former position. Following that, he was given a physical examination by a physician of his own choice; and it was the conclusion of that physician that plaintiff was qualified physically and mentally to perform the duties of brakeman. Shortly thereafter, plaintiff was again sent to Denver and was again examined by the same specialist in nervous and mental diseases. The specialist found that he had recovered from his war neurosis; that he was active, alert, and clear; and that he was a different man. The specialist advised the defendant accordingly, plaintiff was immediately re-employed as a brakeman, and he has been so employed ever since. The qualifications of the physicians who made the several examinations are not challenged, and the conclusions reached by them are not impeached. The motion of defendant for a directed verdict in its favor was well grounded; and the case being in that posture, any error in the instructions relating to the effect of the request for a leave of absence did not prejudice plaintiff and gives no right to a reversal of the judgment.

Affirmed.