**R. B. FEAMSTER, Plaintiff,**

v.

**SOUTHERN RAILWAY COMPANY, Defendant.**

**Civ. A. No. C–119–S–68.**

United States District Court
M. D. North Carolina,
Salisbury Division.

Dec. 12, 1969.

Graham M. Carlton, Salisbury, N. C., for plaintiff.

Stahle Linn, Nelson Woodson, Salisbury, N. C., L. P. McLendon, Jr., Greensboro, N. C., for defendant.

## OPINION OF THE COURT ON PLAINTIFF'S MOTION FOR A NEW TRIAL

HAYES, District Judge.

This action was tried at Salisbury, North Carolina, and a verdict in favor of the defendant was rendered by the jury on the 8th day of October, 1969. The plaintiff filed a motion in writing for a new trial, which motion appears of record and which in part was directed to an alleged error in the Court's charge to the jury, but the Court denied the motion and signed a judgment of dismissal on October 8, 1969. In denying that motion the Court in effect ruled that the defendant was entitled to a directed verdict in its favor, in accordance

with the motion made by the defendant at the close of the plaintiff's evidence and renewed at the close of all the evidence, but the Court reserved its ruling on the motion in accordance with Rule 50 of the Federal Rules of Civil Procedure.

■ The present motion for a new trial by the plaintiff was filed on October 20, 1969, and was based solely on the Judge's charge to the jury, but to which no exception was taken at the time of trial, nor was it mentioned in the plaintiff's first motion for a new trial. The motion is in violation of Rule 51 of the Federal Rules of Civil Procedure and is not timely made. The rule in part provides: "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the ground of his objection."

■ The plaintiff cannot complain of error in instructions to the jury if defendant's motion for a directed verdict ought to have been granted, Weidenfeld v. Pacific Imp. Co., 2 Cir., 43 F.2d 817; Wonnacott v. Denver et al. R. Co., 10 Cir., 187 F.2d 607. This procedural rule is well stated in the latter case at page 608: "For the reason presently outlined, we think the Court should have directed a verdict for the defendant. And it is well settled that an appellant may not be heard to complain of prejudicial errors in the instructions where his adversary was entitled to a directed verdict. That rule is merely the application of a recognized segment of the familiar doctrine that errors which could not have prejudiced the unsuccessful party give no right to a reversal of the judgment."

■ The plaintiff failed to prove the existence of any contract between him and the defendant for any definite term. He had worked by the hour, from day to day, for 26 years but there was no proof of any contract to employ him for a definite period. Under the law of North Carolina it is well settled that a contract of employment for an indefinite period is terminable at the will of either party, with or without cause, and that no damages can be recovered for its cancellation, Howell v. Credit Corp., 238 N.C. 442, 78 S.E.2d 146.

Plaintiff did offer proof of his being a machinist member of a labor union which negotiated a contract with defendant and the contract was offered in evidence. Section 34 of that contract is as follows: "An employee will not be dismissed without just and sufficient cause or before preliminary investigation, which shall be held immediately by the highest officer in charge at the point employed. If, after the preliminary investigation, the case is appealed, an investigation will be held within five days and if it is found that the employee has been unjustly taken out of service, he shall be reinstated and paid for time lost." The evidence conclusively established that he was given a hearing, after notice, which fully met the procedure of the above rule; that he was present and was represented by the Chairman of his Local and other committeemen of his own choosing. The notice is stated below.[1] A part of the evidence at the

---

[1.]           Atlanta, Georgia
August 2, 1966
Mr. R. B. Feamster, Machinist
Atlanta Diesel Shop
Atlanta, Georgia
Dear Mr. Feamster:
   I hereby notify you to attend an investigation in my office at 10: AM E.S.T., Thursday, August 4, 1966, in connection with the charge hereby made that you were guilty of conduct unbecoming an employee of this Company, and guilty of use of intoxicants while riding on Annual Pass No. C–48127 on Train No. 29 leaving Salisbury, N.C., on July 31, 1966, enroute Atlanta, Ga.

   Your conduct while on Train No. 29 on July 31, 1966 was observed as result of complaint filed by the mother of a 12-year-old girl concerning your conduct

hearing is footnote [2]; notice of dismissal [3] and Wyatt letter is [4].

▮ The rule is well established in the federal courts that where the evi-

towards her daughter, who was riding alone on Train No. 48 leaving Atlanta, Ga., on July 15, 1966, enroute Baltimore.

Yours truly

J. B. Waddle

J. C. Barlow
Manager, Atlanta Diesel Shop

2. July 15th—July 16th, 1966, sent in to Auditing Department. Pass Bureau in Washington shows Annual Pass— Southern Railway Annual Pass was issued to Mr. & Mrs. R. B. Feamster, Machinist and Wife, Spencer, N.C. After these facts were developed, we decided to put Mr. Feamster under observation while riding our trains.

Q. Who did you have observing Mr. Feamster?

A. On July 31, 1966, we assigned Patrolman D. A. Crabtree to ride Train 29 from Salisbury to Atlanta to observe Mr. Feamster as he was on the train.

Q. Do you have the letter referred to concerning the trip on July 18th from Mrs. Gray?

A. I have the letter from Mrs. Gray dated July 18th concerning trip July 15th.

Q. Would you read that letter into the investigation?

A. "Mrs. William N. Gray, 705 Deepdene Rd., Baltimore, Md. 21210. Dated July 18, 1966. Mr. L. G. Sak, Director of Passenger Sales & Service, Southern Railway System, Southern Railway Bldg., 99 Spring Street, S.W., Atlanta, Ga. 30303. Dear Sir: As you can see, I am sending copies of this letter to as many men from your company whose names I was able to obtain in the hope that eventually steps will be taken to avoid a possible tragedy on your trains. My twelve year old daughter left Atlanta at 8:45 P.M. on July 15, 1955 and arrived in Baltimore at 1:45 P.M. She was seen 'safely' to her reserved seat by the family she had been visiting. Her seat was by the window, and during the night 'an old man who smoked cigars and smelled of whiskey' took the seat beside her and molested her until he finally detrained. She was crying and terri-

fied and certainly will be afraid to travel by train again ever, especially at night. I am making an issue of this incident because it isn't the first time something of this nature has occurred to a member of my family. When we were living in Atlanta from 1961–1965, our older daughter who was attending the University of Maryland was physically molested by a drunken colored man who had the seat next to hers. Fortunately, she was a little older and had the man put off the train. Because of this experience, she begged us not to let her little sister take the train back to Baltimore. We wish we had adhered to her pleas! Isn't there someone on your trains at night who can walk down the aisles periodically to check on the young girls who are traveling alone? I am thankful that the man who was given the seat beside my daughter wasn't the same man who killed 8 nurses in Chacago. Please do something about this deplorable situation. Very truly yours, Jane S. Gray. Copies: Mr. Brosnan, President, Washington, D.C., Mr. N. B. Ballinger, Atlanta, Mr. B. E. Young, Washington, D.C., Mr. S. S. Wilbanks, Mr. Peter F. Nack, Jr., Atlanta."

Mr. Cary: I would like to enter this letter as Exhibit No. 2

Mr. Cary to Mr. Buckner

Q. Would you care to read it?

A. No sir.

Mr. Cary: I would also like to enter the memo from Agent G. H. Whitlow as Exhibit No. 3.

Mr. Buckner: I'd like to object to that until you read it. I don't know what's in that agent's report there as No. 3 Exhibit.

3.                    Atlanta, Georgia
                    August 6, 1966

*Certified Mail No. 254077*

Mr. R. B. Feamster
425 North Salisbury Avenue
Spencer, N.C.

Dear Sir:
I refer to the investigation held with you in Office of Manager, Atlanta Diesel

---

4. See note 4 on page 29.

dence is not disputed or of such conclusive character that a verdict would have to be set aside in the exercise of a sound judicial discretion, a verdict should be directed, Small Co. v. Lamborn & Co., 267 U.S. 248, 45 S.Ct. 300, 303, 69 L.Ed. 597. "The rule for testing the direction of a verdict * * * is that where the evidence is undisputed, or of such conclusive character that if a verdict were returned for one party * * * it would have to be set aside in the exercise of a sound judicial discretion, a verdict may and should be directed for the other party."

■ The plaintiff admits he was given a free pass to ride defendant's train from his home near Salisbury to Atlanta where he worked in the machine shops, and from Atlanta to Salisbury, and it was his custom to go home on the week ends; he admitted that on the night of July 15, 1966, he used the free pass and rode defendant's train from Atlanta to Salisbury; that he occupied a seat next to Randall Gray, a 12 year old girl passenger, who was unaccompanied by anyone; that he made certain advances to her; he took her picture, he threw his rain coat over her legs and she threw it off, that he kissed her (although he did say the train gave a jerk and caused his lips to hit hers) and he admitted that the child got emotionally upset by his conduct and was crying. The girl reported this to her mother, on her arrival in Baltimore, and was hysterical at the time. It is undisputed that the mother wrote several officers of the defendant, the contents of which are copied in footnote 2; that the defendant traced out the complaint and after finding that plaintiff was the man who frightened the girl, defendant caused its employee Crabtree to board the train at Salisbury and to observe his conduct going back to Atlanta on July 31. The plaintiff substantially admitted the facts testified to by Crabtree, especially that plaintiff got off the train in Charlotte and came back with two bottles of Coca Cola; that he opened one and drank about half of it; then took a bottle of tax paid liquor out of his hand bag and poured some of it into the Coca Cola bottle and drank it; that he did likewise with the second Coca Cola bottle; that plaintiff offered Crabtree a drink of it calling it Bourbon, and offered a drink to an army official who was a passenger on the train; after taking a nap, he went through the car, tak-

---

Shop, on August 4, 1966 at which time you were charged with being guilty of conduct unbecoming an employee of this Company and guilty of use of intoxicants while riding on Annual Pass No. C–48127 on Train No. 29 leaving Salisbury, N.C., on July 31, 1966, enroute Atlanta, Georgia.

Investigation developed that you are guilty as charged, and you are hereby dismissed from service of Southern Railway Company.

Please turn in your annual pass and any other Company property in your possession to my office promptly.

Yours truly,
J. C. Barlow
Mgr., Atlanta Diesel Shop

Cy—Mr. C. L. Wyatt, Local Chairman
B/Cy—Mr. J. B. Addington:
He is a machinist.
J C B
B/Cy—Mr. J. G. Moore:

4. INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS DISTRICT LODGE No. 4

March 6, 1967

Mr. J. C. Barlow
Manager, Deisel Shop
Atlanta, Georgia
Dear Sir:

This is an appeal for you to reinstate Machinist R. B. Feamster to service with all reights but without pay for any lost time.

Mr. Feamster has been out of service for about eight months and we feel that this is long enough for what he was charged with. We do not claim any pay for lost time but we do appeal to you to restore him to service.

Will you please reply when you have reached your decision?

Sincerely yours
C. L. Wyatt
Local Chairman

ing pictures of various lady passengers; and afterwards he told one of them the picture ought to be sent to a hosiery manufacturer to be used as an ad, to which she objected and demanded he deliver it to her. These facts show that his behavior was offensive to the passengers and injurious to the defendant's business and constituted good and sufficient cause for his dismissal. A verdict in defendant's favor ought to have been granted on these undisputed facts.