**Alton HARRIS and United States of America, Plaintiffs-Appellees,**

**v.**

**Angie QUINONES, and Wesco Insurance Company, Defendants-Appellants.**

**Nos. 74–1433, 74–1519.**

United States Court of Appeals, Tenth Circuit.

Argued Oct. 24, 1974.

Decided Dec. 11, 1974.

534

Edward E. Triviz, Las Cruces, N. M. (Victor R. Ortega, U. S. Atty., and Mark C. Meiering, Asst. U. S. Atty., Albuquerque, N. M., on the brief), for plaintiffs-appellees.

William W. Bivins, Las Cruces, N. M., for defendant-appellant Angie Quinones.

LeRoi Farlow, Albuquerque, N. M., for defendant-appellant Wesco Ins. Co.

Before PICKETT, McWILLIAMS and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

These consolidated appeals stem from a car-motorcycle accident which occurred June 23, 1972, in Las Cruces, New Mexico. In the first appeal, Angie Quinones, the driver of the car involved in the accident and the defendant below, ap-

peals from an order granting a new trial to the plaintiffs, Harris, the driver of the motorcycle, and the United States,[1] following a jury verdict in her favor at the first trial. The second appeal is brought by Quinones' insurance carrier, Wesco Insurance Company (Wesco), from a declaratory judgment holding that at the time of this accident the car driven by Quinones was covered by an insurance policy issued by Wesco.

We will treat these appeals separately.

## I.

Angie Quinones was driving her car in a westerly direction on Mesquite Street in Las Cruces in the late afternoon of June 23, 1972. Having stopped at an intersection where Mesquite crosses Main Street—a four-lane highway running generally North-South—Miss Quinones proceeded across the intersection in spite of the fact that, because of the glare from the sun, she was unable to clearly observe traffic on Main to which she was obligated to yield. At the far side of the intersection her car collided with a motorcycle driven by plaintiff Harris who was traveling in a southerly direction on Main. Neither driver, apparently, observed the other until the moment of impact.

At the first trial the jury returned a verdict in favor of Miss Quinones, finding that she was not "guilty" of negligence and that the plaintiff Harris was "guilty" of contributory negligence. On Motion by Harris, the trial judge granted a new trial on the ground that the evidence was insufficient to support the verdict. At the second trial Harris was awarded a judgment of $40,000 and the United States was awarded $3,443.80 for medical services provided to Harris. Miss Quinones contends that the trial court erred in granting a new trial to Harris following the first verdict in her favor. We disagree.

We have consistently recognized that a motion for a new trial made on the ground that the verdict of the jury is against the weight of the evidence normally presents a question of fact and not of law and is addressed to the discretion of the trial court. Community National Life Insurance Company v. Parker Square Savings and Loan Association, 406 F.2d 603 (10th Cir. 1969); Champion Home Builders v. Shumate, 388 F.2d 806 (10th Cir. 1967); Peter Kiewit Sons Company v. Clayton, 366 F.2d 551 (10th Cir. 1966); Locke v. Atchison, Topeka and Santa Fe Railway Company, 309 F.2d 811 (10th Cir. 1962). On review, we will not reverse a decision granting or refusing to grant a motion for new trial absent an unusual situation, Moore v. Shultz, 491 F.2d 294 (10th Cir. 1974), U.S.App.Pndg., or the showing of a gross abuse of discretion on the part of the district court judge, Holmes v. Wack, 464 F.2d 86 (10th Cir. 1972).

From the jury's verdict, which contained an unauthorized written message from the foreman,[2] the trial judge was here able to deduce that the jury, in finding the defendant "not guilty": (1) had ignored the uncontroverted evidence that Miss Quinones had proceeded blindly across the intersection; and (2) had relied upon evidence of little or no credible weight in finding Harris "guilty" of contributory negligence. The cases cited by appellant for the rule that failure to keep a lookout may constitute contributory negligence, and that evidence of such a failure may support a verdict, are inapposite. In each of those cases there existed strong evidence, lacking here, that the party charged with failure to keep a lookout had either seen the other vehicle and had failed to react properly, or that he clearly *should have been able* to see the other party (or vehicle) involved in the accident prior to its occurrence. Here the only evidence tending to show that Harris had failed to keep a

---

1. The claim of the United States here is for medical services provided Harris, a member of the military.

2. Under the section entitled "We find for the defendant" was handwritten: "1). Angie G. Quinones not guilty. 2). Plaintiff guilty coz of neg."

proper lookout was conjectural testimony that *if* Harris had seen the Quinones' vehicle he may have been able to avoid the accident. No witness testified that under the conditions presented here Harris *should* have been able to see the Quinones' vehicle. In fact, the only witness who was in the near vicinity of Harris (following at an unspecified distance) did not herself see the Quinones' vehicle until near the moment of impact and she also observed that Harris appeared to be operating the motorcycle in a careful manner immediately prior to the collision. The mere fact that Harris' view of this wide intersection was unobstructed is not strong evidence that he *should* have been aware of the Quinones vehicle suddenly approaching from the side.

■ Similarly, the evidence presented that Harris had been drinking and that he was speeding was so slight that it lent little or no weight to the allegation of contributory negligence. Finally, evidence that Harris did or did not take "evasive" action is inconsequential where, as here, no convincing evidence was offered that he had or should have had an opportunity to take such action.

Under the totality of these circumstances evidenced by our careful review of the entire record we hold that the trial court did not err in ruling that the verdict returned was against the decided weight of the evidence. The trial court did not commit a gross abuse of discretion.

## II.

In this consolidated appeal Wesco appeals from an adverse declaratory judgment holding that on the date of the accident in the above cause there was in existence a valid insurance policy issued by it covering the vehicle driven by Angie Quinones and that Wesco in bad faith had failed to negotiate a settlement with the plaintiffs Harris and the United States and was therefore liable for an excess judgment award.

On January 13, 1972, Wesco issued an insurance policy to Joe Quinones (Angie's father) covering two vehicles, one of which was involved in this accident and was driven by Angie Quinones, an "omnibus insured" under the policy. The policy period was from January 13, 1972, through January 13, 1973. The premiums for this policy were financed through Southwest Investment Company (S.I.C.), a finance company, in relation to which Wesco stood as a wholly-owned subsidiary. Joe Quinones executed a "premium note" in favor of S.I.C. obligating himself to make monthly payments to S.I.C. Under the provisions of the note, S.I.C., upon default of Quinones, could opt to declare the note mature and collect the unpaid premiums. Also, Joe Quinones granted S.I.C. an irrevocable power of attorney to cancel his insurance policy with Wesco without notice to him upon default in payment. Joe did in fact miss a payment and was sent notice by S.I.C. that his insurance would be cancelled as of June 19, 1972. The accident here occurred June 23, 1972. On June 26, 1972, Joe went to the Wesco agent and signed a reinstatement form. It is unclear whether Joe was told at that time that the accident of June 23 would not be covered.

Prior to the trial of the personal injury suit between Angie Quinones and Harris, Wesco brought a declaratory judgment action in State court against Joe Quinones to determine if the policy was in force and effect on June 23. Angie Quinones and Harris were not named as parties. Joe did not answer or appear and the court entered a default judgment holding that the policy was not in effect on that date. After the personal injury trial (and the verdict against Miss Quinones), Angie Quinones and Harris brought a declaratory judgment action against Wesco in federal court, again on the issue of whether the policy was in force and effect on the date of the accident. Upon trial to the jury it was found that the policy was in effect on that date, and that Wesco had acted in bad faith in not negotiating for settlement of the case within the policy limits.

On this appeal Wesco contends the trial court erred in: (1) failing to dismiss the cause because of the res judicata effect of the prior state declaratory judgment; (2) instructing the jury as to the plaintiffs' "theory of the case" and failing to give certain of Wesco's requested instructions; (3) failing to grant Wesco's motion to dismiss the claims in excess of the policy limits; and (4) in admitting certain allegedly prejudicial exhibits.

### A.

■ Wesco contends that the prior state declaratory judgment which held that this insurance policy had been cancelled was binding not only upon Joe Quinones (the named insured), but also upon Angie Quinones and Harris, even though they were not named in that action, because they were not "necessary parties" to a decision as to whether the policy was in effect on the date of the accident. It is well established that for the doctrine of res judicata to apply the prior judgment must be one between the same parties or their privies. Glass v. United States Rubber Company, 382 F.2d 378 (10th Cir. 1967); Wight v. Chandler, 264 F.2d 249 (10th Cir. 1959).

■ Wesco has not established that Angie Quinones was in privy with any party to the prior action. Wesco's cases cited for the proposition that Angie Quinones was not a "necessary party" for a determination as to whether this policy had been cancelled are not persuasive inasmuch as Wesco had failed to show that under New Mexico law Angie's rights are solely derivative from the policyholder, and that as an "omnibus insured" she did not have a separate claim against the insurer, i. e., independent of the insurer's responsibility to the named insured. See, 7 Am.Jur.2d Automobile Insurance § 110. Further, as to the plaintiffs Harris and the United States, Wesco cites no New Mexico cases, nor have we uncovered any through our own research, which hold that they would be bound by a declaratory judgment of this nature in which they were not named as parties. Other jurisdictions have, in

fact, ruled that they would not be so bound. See, e. g., Glandon v. Searle, 68 Wash.2d 199, 412 P.2d 116 (1966). The trial court, in its instructions to the jury, was of the opinion that under New Mexico law the plaintiffs Harris and the United States would not be bound by the prior judgment. We have consistently paid great deference to the opinion of the federal district judge sitting in the particular state whose law is in question. Symons v. Mueller Company, 493 F.2d 972 (10th Cir. 1974); Julander v. Ford Motor Company, 488 F.2d 839 (10th Cir. 1973); Wells v. Colorado College, 478 F.2d 158 (10th Cir. 1973); Great-West Life Assurance Company v. Levy, 382 F.2d 357 (10th Cir. 1967).

Finally, we have previously supported the view that in an action for declaratory judgment all persons interested in the declaration are "necessary" parties. Franklin Life Ins. Co. v. Johnson, 157 F.2d 653 (10th Cir. 1946). Without question the rights of both Angie Quinones and Harris (although the latter's rights are admittedly contingent) were vitally affected by the State declaratory judgment.

In light of the above discussion we hold that the trial court did not err by refusing to dismiss this cause of action, or in instructing the jury that the prior judgment was not binding upon Angie Quinones or the plaintiffs Harris and the United States.

### B.

Wesco alleges that the trial court erred in not giving certain of its instructions; and in instructing the jury as to Quinones' and Harris' "theory of the case" in that such theory was not based upon applicable New Mexico law and/or was not supported by the evidence. For the reason hereinafter set forth, we conclude that Wesco's reliance upon these alleged errors is not well placed.

■ Wesco, having raised the defense of cancellation of the policy, had the *burden* of proving strict compliance with its own cancellation provisions. See, Employers' Liability Assurance Cor-

poration v. Maes, 235 F.2d 918 (10th Cir. 1956) and cases cited therein. Under condition 16 of Wesco's policy, cancellation could be effectuated by either the insured or the insurer in the following manner:

16. CANCELATION This policy may be canceled by the insured named in item 1 of the declarations by surrender thereof to the company or any of its authorized agents or by mailing *to the company* written notice stating when thereafter the cancelation shall be effective. This policy may be canceled by the *company* ["company" is defined on page one of the policy to mean Wesco Insurance Company] by mailing to the insured named in item 1 of the declarations at the address *shown in this policy written notice* stating when not less than ten days thereafter such cancelation shall be effective. (Emphasis added).

When Joe Quinones executed the "Auto and/or Fire and Casualty Insurance Premium Note" in favor of S.I.C. he granted S.I.C. the following power:

The customer hereby grants permission, authority and irrevocable power of attorney to lender or any person selected by it to cancel any and all policies of insurance above described without notice of any kind whatsoever to undersigned upon default in any obligation . . . .[3]

Where there is no ambiguity, the court must construe the language of a policy in accordance with the plain, ordinary meaning of its terms. King v. Travelers Insurance Company, 84 N.M. 550, 505 P.2d 1226 (1973). Words in a contract of insurance will be given the meaning a reasonable person in the position of the insured would have understood them to mean, Miller v. Mutual Benefit Health and Accident Association of Omaha, 76 N.M. 455, 415 P.2d 841 (1966), and any ambiguity will be construed liberally in favor of the insured. Davison v. Busi-

ness Men's Assurance Company of America, 85 N.M. 796, 518 P.2d 776 (1974); Gray v. International Service Insurance Company, 73 N.M. 158, 386 P.2d 249 (1963); Morris v. Fireman's Fund Insurance Company, 72 N.M. 395, 384 P.2d 465 (1963).

 Neither party has alleged that these clauses are in any way ambiguous. The plain meaning of these clauses is: (1) Quinones could cancel the policy by surrendering it to Wesco or by giving written notice to Wesco; (2) Wesco could cancel the policy by itself mailing notice to Quinones; and (3) under the premium note, S.I.C. had power to act for Quinones in cancelling this policy with Wesco. The undisputed facts reveal: (1) Joe Quinones did not give notice to Wesco that he was cancelling the policy and he did not surrender the policy; (2) Wesco presented no evidence that it had sent notice of cancellation to Quinones, but rather only that S.I.C. had sent such notice [Wesco's Exhibit "E" is a cancellation form sent by S.I.C., not Wesco]; and (3) there is no evidence that S.I.C., acting under its power of attorney for Quinones, sent notice to Wesco cancelling the policy or that it surrendered the policy as provided under condition 16 of the policy. S.I.C., as agent for Quinones under the power of attorney, could have effectuated a cancellation of this policy only in the same manner as its principal, Joe Quinones, i. e., by following condition 16 of the policy. Furthermore, we deem it relevant to note that on page 22 of its brief filed in this Court, Wesco maintains that there was no evidence that S.I.C. was in any way an agent of Wesco. S.I.C.'s mailing of cancellation notice, therefore, can in no way be credited to Wesco.

 From these undisputed facts in the record before us, we hold that, as a matter of law, this policy was not cancelled pursuant to its own terms prior to the date of the accident, June 23, 1972.[4]

3. The note also gave S.I.C. the power to declare the note mature upon default.

4. Had Quinones and Harris properly moved for a directed verdict on these grounds it

should have been granted, and had the motion been denied by the court and had the case gone to the jury (as it did here anyway), our holding that the error now claimed by

Since Wesco failed to carry its burden of proving its defense of cancellation in strict compliance with its own cancellation provisions, any error committed by the trial court in its instructions, if such there be, must be treated as harmless error and not as grounds for reversal. Rule 61, Fed.R.Civ.P., 28 U.S.C.A.

Our holding is analogous to that of the Ninth Circuit in Feeley v. Northern Pacific Railway Company, 230 F.2d 316 (9th Cir. 1956). The Court there held that a plaintiff, following an adverse decision below, who had failed to present evidence as to an essential element in his theory of liability, is precluded from claiming harm resulting from the trial court's instructions to the jury. Here Wesco, with the *burden* of proving cancellation, stands in that same position. Wesco is, accordingly, precluded by the facts in this record from establishing its defense and cannot here claim that the trial court's errors in instructing the jury as to Quinones' and Harris' "theory of the case" resulted in prejudicial error. Errors which could not have prejudiced the unsuccessful party afford no right to reversal of the judgment. Wonnacott v. Denver & Rio Grande Western R. Co., 187 F.2d 607 (10th Cir. 1951).

### C.

Finally, Wesco contends that its refusal to negotiate a settlement with the plaintiffs did not constitute "bad faith" on its part, Lujan v. Gonzales, 84 N.M. 229, 501 P.2d 673 (1972), rendering it liable for an excess judgment award because its refusal was reasonably based upon the following considerations: (1) there was clearly no coverage under the insurance policy; and (2) there was in existence a prior declaratory judgment in state court holding the policy to be void. However, as we have already held, Wesco's claim of non-coverage is without substantial foundation in this record and

Wesco is but harmless error could have been grounded upon clear authority in this circuit.

its reliance upon the prior state declaratory judgment was clearly erroneous.

We hold that the trial court did not err in denying Wesco's motion to dismiss the claim for excess judgment. *Compare,* Foundation Reserve Insurance Company v. Kelly, 388 F.2d 528 (10th Cir. 1968). There was sufficient evidence for the jury to conclude that Wesco did not "give its interests and the interests of its insured equal consideration." Lujan v. Gonzales, *supra,* 501 P.2d at 680.

We have carefully considered each of Wesco's additional allegations of error. We hold that they are without merit.

We affirm.

*See,* Wonnacott v. Denver & Rio Grande Western R. Co., 187 F.2d 607 (10th Cir. 1951).