**Norman and Viola CALHOUN, Plaintiffs-Appellants,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 75–1326.

United States Court of Appeals, Ninth Circuit.

June 16, 1978.

Rehearing Denied Aug. 3, 1978.

Certiorari Denied Jan. 15, 1979. See 99 S.Ct. 1025.

---

Norman P. Calhoun, in pro per.

Gilbert E. Andrews, Dept. of Justice, Washington, D. C., Stanley S. Shaw, Jr., Dept. of Justice, Washington, D. C., for the United States.

Before MERRILL and GOODWIN, Circuit Judges, and SCHNACKE,* District Judge.

SCHNACKE, District Judge.

Plaintiffs (hereinafter "taxpayers") sued in the district court for a refund of $87,-

* Honorable Robert H. Schnacke, United States District Judge, for the Northern District of California, sitting by designation.

351.35 paid in federal income taxes, including penalties and interest under a deficiency assessment. The taxes were for 1956, 1957, 1959–63. Taxpayers appeal *pro se* from a judgment for defendant (hereinafter "the Government"), based on a verdict of a six-member jury.

■ (1) *Jury size* : Contrary to taxpayers' contention, they were not entitled to a jury of 12 members [*Colgrove v. Battin,* 413 U.S. 149, 93 S.Ct. 2448, 37 L.Ed.2d 522 (1973)].

■ (2) *State-court judgment* : Taxpayers, after the trial of the case at bar, got a judgment in their favor in state court, against the state taxing agency, involving taxes for the years involved in the case at bar. They seem to contend this state-court judgment has a collateral estoppel effect on the present appeal, but such is not so [see *Sea-Land Services, Inc. v. Gaudet,* 414 U.S. 573, 593, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974)]; the state-court judgment is legally irrelevant to the present appeal.

■ (3) *Government counsel's conduct at trial* : Taxpayers, who represented themselves, contend that at trial Government counsel roamed the courtroom at will and made distracting gestures. But taxpayers offer no proof for these contentions and have not shown that the alleged behavior prejudiced them before the jury. Taxpayers also state that Government counsel orally interrupted taxpayers many times during the trial. Taxpayers, as to some of these interruptions, do give citations to the record. However, an examination of the citations shows that the interruptions were not improper. Indeed, two of the citations are to comments by Government counsel in response to taxpayers' own questions to him. Other interruptions tended to clarify matters at the trial or otherwise help the conduct of the trial.

■ (4) *Delayed reporter's transcript* : It was not until about two years after trial that the reporter's transcript was prepared. However, taxpayers were not required to submit their opening appellate brief until after they received the reporter's transcript. They contend that their preparation of their opening appellate brief was prejudiced by errors and omissions in the transcript, but they don't point to any specific examples. Under the circumstances, the conduct of the court reporter, while deplorable, does not justify setting aside the judgment.

■ (5) *Understatement of income* : When the Government tried to audit taxpayers' tax returns for the years in question, taxpayers refused to allow access to their records. The Government, therefore, computed the income by the bank-deposit method. It determined the total amount of bank deposits for a given year and subtracted the amounts that could be explained, for example, as transfers between accounts. The unexplained part of the total bank deposits for that year was considered to be taxable income. It was taxpayers' burden to show that these unexplained deposits came from a nontaxable source [see *Ruark v. C. I. R.,* 449 F.2d 311, 312 (9th Cir. 1971); *Irolla v. U. S.,* 390 F.2d 951, 953, 182 Ct.Cl. 775 (1968)]. They contend that the evidence they presented at trial met that burden. That evidence largely consisted of their own unsupported testimony and of schedules based only on their uncorroborated statements. The jury obviously disbelieved them, as it was entitled to do.

(6) *Jury Instruction* : The judge instructed the jury to choose, for each tax year at issue, between two alternatives: (a) taxpayers did not understate their income at all; or (b) taxpayers understated their income in the amount contended for by the Government. Thus, there was no alternative (c)—taxpayers understated their income, but in an amount less than that contended for by the Government. The jury picked (b) for each tax year in question, and taxpayers contend that the "all or nothing" jury instruction prejudiced taxpayers. However, taxpayers did not object at trial to the instruction. This lack of objection may well have been a matter of strategy, in that they may have thought the instruction would help them. They might well have expected that the jury, given only the two

alternatives, would select "no understatement" if they believed there was understatement, but in an amount less than contended for by the Government.

Actually, the instructions did contain an error. The judge instructed that the Government contended that the amount of understatement was the amount of unexplained bank deposits set forth in the revenue agent's report. According to that report, the unexplained bank deposits for four of the years in question were as follows:

| | |
|---|---|
| 1956 | $13,016.99 |
| 1957 | $13,468.00 |
| 1961 | $ 1,796.31 |
| 1962 | $64,441.33 |

However, the Government's answers to taxpayers' interrogatories gave a lower figure for 1961, and the Government's answers to taxpayers' requests for admission gave lower figures for 1956, 1957, and 1962.

| | |
|---|---|
| 1956 | $ 1,879.33 |
| 1957 | $ 2,163.00 |
| 1961 | $ 845.57 |
| 1962 | $61,161.47 |

■ As mentioned, the jury was entitled to find some understatement of income in each of the seven years. If they found some understatement, the jury instruction entitled them to find an understatement in the amount set forth in the revenue agent's report. Taxpayers lack standing, on a motion for new trial or on appeal, to challenge that result—even if the jury instruction was plain error—because they made no objection at trial to the instruction [F.R. Civ.P., Rule 51; *Crespo v. Fireman's Fund Indemnity Co.*, 318 F.2d 174, 175 (9th Cir. 1963); see also *Feamster v. Southern Railway Co.*, 49 F.R.D. 26, 27 (M.D.N.C.1969)].

■ However, the Government does concede that its answers to discovery requests are binding on it. (Contrary to taxpayers' view, these are the only binding concessions the Government has made as to taxpayers' understatement of income.) It is true that the Government's answers to taxpayers' requests for admission gave a sum for 1961 unexplained bank deposits which was the same as in the revenue agent's report. But the Government is bound by the lower figure for 1961 unexplained bank deposits, which lower figure is in its answers to interrogatories.

(7) *Fraud* : Part of what taxpayers are seeking to recover in this action is the amount of a civil penalty imposed on them based on the Government's contention that at least part of the understatement of income in each year in question was due to fraud [see 26 U.S.C. § 6653(b)]. Taxpayers are entitled to recover the amount of this penalty unless the Government has met its burden of proving taxpayers' fraud by clear and convincing evidence [*Irolla v. U. S., supra* at 953–954].

■ The Government called no witnesses at trial, but the Government's burden can be met, as it was here, by evidence adduced from witnesses called by taxpayers. The evidence showed a refusal by taxpayers to produce records; gross understatement of income; use of some 41 bank accounts in various names; and the concealment of interest income and income from capital gains. These may all be deemed by the jury to be indications of fraud [see *Ruark v. C. I. R., supra* at 312–313]. The evidence supported the jury's finding that understatement of income in each of the seven years was due, at least in part, to fraud. And from this it follows that the Government's assessment of a tax deficiency was not barred by the statute of limitations [see 26 U.S.C. § 6501(c)(1)].

Taxpayers complain that the Government never gave them a statement of facts constituting the alleged fraud. However, the Government's response to taxpayers' amended motion for summary judgment did include material indicating at least some of what the Government considered evidence of taxpayers' fraud. Taxpayers have not shown prejudice from the Government's failure to submit a fuller statement of facts of fraud.

(8) *Conclusion* : This Court concludes in the light of what has been said so far in this opinion, that the trial judge properly denied taxpayers' motions for summary judgment and for new trial. The judgment is affirmed as to the years 1959, 1960, and 1963.

Based on the evidence the jury heard and the instructions it received the jury also acted properly as to the tax years 1956, 1957, 1961, and 1962, and this Court is not going to order additur or remittitur. However, in view of the Government's aforementioned concessions as to those four years, this Court, as a matter of basic fairness, hereby orders this case remanded to the district court for a recomputation of the amount of taxes, interest and penalties due for 1956, 1957, 1961, and 1962 and entry of judgment for taxpayers in the appropriate amount.

Neither party shall recover costs. Affirmed as modified.