T.C. Memo. 1998-445

UNITED STATES TAX COURT

PRAMOD AND RAJ TANDON, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18048-97.          Filed December 22, 1998.

Joseph J. Ecuyer III, William A. Neilson, and Douglas L. Salzer, for petitioners.

John F. Driscoll, for respondent.

MEMORANDUM OPINION

DAWSON, Judge:  This case was assigned to Special Trial Judge Robert N. Armen, Jr., pursuant to the provisions of section 7443A(b)(4) of the Internal Revenue Code of 1986, as amended, and

Rules 180, 181, and 183.[1]  The Court agrees with and adopts the Opinion of the Special Trial Judge, which is set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

ARMEN, Special Trial Judge:  This matter is before the Court on petitioners' Motion for Award of Reasonable Litigation and Administrative Costs under section 7430 and Rules 230 through 233.

After concessions by respondent,[2] the issues for decision are as follows:

(1) Whether respondent's position in the administrative and court proceedings was substantially justified.  We hold that it was.

(2) Whether the administrative and litigation costs claimed by petitioners are reasonable.  In light of our holding as to the first issue, we need not address this second issue.

Neither party requested an evidentiary hearing, and the Court concludes that such a hearing is not necessary for the

---

[1]  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for 1991 and 1992, the taxable years in issue.  However, all references to section 7430 are to such section in effect at the time that the petition was filed.  All Rule references are to the Tax Court Rules of Practice and Procedure.

[2]  Respondent concedes: (1) Petitioners exhausted their administrative remedies, see sec. 7430(b)(1); (2) petitioners did not unreasonably protract the proceedings, see sec. 7430(b)(3); (3) petitioners substantially prevailed, see sec. 7430(c)(4)(A)(i); and (4) petitioners satisfied the applicable net worth requirement, see sec. 7430(c)(4)(A)(ii).

proper disposition of petitioners' motion.  Rule 232(a)(2).  We therefore decide the matter before us based on the record that has been developed to date.

Background

Petitioners are husband and wife and resided in Kenner, Louisiana, at the time that their petition was filed with the Court.  Petitioners moved to the United States from India in 1979.

Petitioners filed their Federal income tax returns for 1991 and 1992 in August 1993 and January 1994, respectively. Petitioners filed Federal income tax returns for 1991 and 1992 for RAJ International of Louisiana, Inc. (RAJ), petitioners' solely owned and controlled "S" corporation, in March 1992 and January 1994, respectively.  Petitioners failed to file any Federal income tax returns for the years 1987 through 1990.

Respondent initiated an examination of petitioners' and RAJ's tax returns for the taxable years 1991 and 1992.  Revenue Agent Bacino was assigned to both these examinations.

RAJ was in the business of selling women's clothing, jewelry, and accessories through a store in Metairie, Louisiana, and at various trade shows held throughout the country.  RAJ conducted a substantial portion of its business activity in cash.

Revenue Agent Bacino determined that RAJ's books and records were inadequate and incomplete and that they failed to reflect accurately RAJ's financial activity.  RAJ's income tax preparer

informed Revenue Agent Bacino that the preparer had utilized a "margin ratio" methodology to estimate a significant number of both the income and expense figures. The preparer informed Agent Bacino that a "margin ratio" methodology is similar to a percentage markup methodology whereby income is determined based on the cost of goods sold and the percentage at which the seller typically marks up the goods. However, given RAJ's inadequate recordkeeping with respect to the cost of goods sold, Revenue Agent Bacino found that the "margin ratio" methodology did not accurately reflect RAJ's financial activity.

In conducting the examination of petitioners' individual returns, Revenue Agent Bacino utilized bank deposits to reconstruct petitioners' taxable income for the years in issue. Upon review of petitioners' bank statements, Revenue Agent Bacino determined that petitioners had made unexplained deposits to their personal bank accounts substantially in excess of the income reported on their tax returns for the years in issue. Specifically, Revenue Agent Bacino determined that petitioners' bank deposits exceeded petitioners' reported income by $200,713 for 1991 and by $136,063 for 1992.

To explain this discrepancy, petitioners initially informed Revenue Agent Bacino that during the years in issue petitioners were the recipients of a number of loans totaling approximately $200,000. At a later time, petitioners informed Revenue Agent Bacino that during the years in issue they had also received

inheritance in the amount of $9,500 and gifts in the amount of $8,000.

Revenue Agent Bacino requested petitioners to provide substantiation, including written documentation, for their claim regarding the receipt of loans, inheritance, and gifts. In this regard, petitioners provided Revenue Agent Bacino with the names of certain individual lenders. Revenue Agent Bacino was able to confirm the existence of one such loan in the amount of $50,000 and adjusted his bank deposits determination by that figure.

Revenue Agent Bacino determined that there was no documentary evidence to establish the existence of any additional alleged loans. There were no written agreements or terms or any principal or interest payments made towards these loans. He therefore attempted to verify the existence of the alleged loans from the listed individuals through telephone conversations, meetings, and correspondence.

A number of these individuals provided written or oral statements attesting to loans to petitioners. However, Revenue Agent Bacino determined that he could not rely on the statements made by these individuals without further substantiation. He found that for the most part the individuals that petitioners listed as lenders were relatives or long-time friends of petitioners who only provided vague and general statements regarding the loans.

Revenue Agent Bacino also concluded that for the most part these individuals lacked credibility.  For example, in many instances, their account of the events surrounding the alleged loans changed from one meeting to the next.  In other instances, there was a failure to recall the details regarding the alleged loan transactions.  In one instance, the lender could not be reached because he was located outside the country.  Revenue Agent Bacino further determined that even if petitioners had borrowed such amounts, there was no persuasive evidence that the loan proceeds were paid in cash and deposited to petitioners' accounts.

In concluding his investigation of the leads provided by petitioners, Revenue Agent Bacino determined that petitioners had failed to substantiate a nontaxable source of income with respect to a large portion of the deposits.  His final report with respect to petitioners' individual returns reflected the following:

|  | 1991 | 1992 |
|---|---|---|
| Total deposits: | $217,862 | $160,345 |
| Total cash expenditures |  | 31,435 |
| Nontaxable items[1] | (68,707) |  |
| Reported income | (17,149) | (24,282) |
| Total adjustment | 132,006 | 167,498 |

[1]  Includes "not sufficient funds" items and inter-account transfers.

Revenue Agent Bacino did not make any adjustments to RAJ's returns.

Thereafter, petitioners administratively appealed Revenue Agent Bacino's determinations. With additional substantiation at the appeals level, respondent's Appeals Office determined that petitioners' cash expenditures during 1992 were $6,152 rather than $31,435 as determined by Revenue Agent Bacino, and that there were additional nontaxable deposits to petitioners' accounts in the amounts of $23,696 for 1991 ($13,065 for "not sufficient funds" deposits, $6,205 for "insurance loan" and $4,426 for "insurance proceeds") and $8,485 for 1992 (for "not sufficient funds" deposits). Thus, respondent's Appeals Office redetermined a total adjustment for 1991 in the amount of $108,310 and for 1992 in the amount of $133,730.

Petitioners also reasserted their claim that the deposits were from additional loans, gifts, and inheritances. However, they did not provide any further substantiation for this claim, and respondent's Appeals Office did not accept it.

At the appeals level, petitioners for the first time actively argued that a large portion of the deposits to their personal bank accounts constituted: (1) Corporate gross receipts previously reported on RAJ's returns, and (2) distributions with respect to petitioners' stock previously reported at the corporate level.

To substantiate the claim that a portion of the deposits constituted corporate gross receipts previously reported on RAJ's returns, petitioners provided the Appeals officer with a summary

bank deposits analysis prepared by their accountant showing that RAJ's 1991 and 1992 returns reflected substantially higher gross receipts than amounts deposited into RAJ's corporate accounts. Petitioners asserted that a large portion of the deposits to their personal accounts represented previously reported amounts on the returns of RAJ. Apart from the bank deposits analysis prepared by their accountant, petitioners did not provide any substantiation for their claim that a portion of the deposits constituted a distribution with respect to petitioners' stock.

The Appeals officer rejected petitioners' assertions regarding the corporate source of deposits based on the following grounds: First, RAJ's corporate books and records were inadequate to establish the corporate gross receipts. Second, petitioners did not produce the original bank statements on which they relied but rather simply produced a summary statement prepared by their accountant. Third, contrary to petitioners' claim that a portion of the deposits represented distributions with respect to their stock, the 1991 and 1992 returns filed by RAJ showed no distributions to petitioners. Finally, given the inadequacy of RAJ's records concerning the cost of goods sold, there was no evidence that even if a portion of the deposits did represent gross receipts reported by RAJ, such deposits did not in fact represent taxable income to petitioners (for lack of basis in corporate stock). Respondent's Appeals officer

therefore did not make any adjustments to Revenue Agent Bacino's determination regarding deposits from a corporate source.

By notice of deficiency dated June 13, 1997, respondent determined an increase in petitioners' taxable income in the amount of $108,310 for 1991 and $133,730 for 1992. Respondent determined corresponding deficiencies in the amounts of $34,724 and $42,111, respectively, additions to tax under section 6651(a)(1) in the amounts of $8,681 and $6,317, respectively, and accuracy-related penalties under section 6662(a) in the amounts of $6,945, and $8,422, respectively.

Petitioners filed a petition with this Court on September 2, 1997. Respondent filed an answer on September 29, 1997. This case was called from the calendar on March 9, 1998. On that day, the parties filed a stipulation of settlement with the Court through which each party conceded 50 percent of the understatement amount.[3] Petitioners orally moved for an award of administrative and litigation costs. At the Court's discretion, petitioners filed a written motion on March 20, 1998.

Discussion

We apply section 7430 as amended by the Taxpayer Relief Act of 1997 (TRA), Pub. L. 105-34, secs. 1285 and 1453, 111 Stat.

---

[3] In addition, the parties agreed that for 1991 and 1992 there are additions to tax under sec. 6651(a)(1) owed by petitioners in the amounts of $1,546 and $847, respectively, and accuracy-related penalties under sec. 6662(a) owed by petitioners in the amounts of $1,237 and $677, respectively.

788, 1038-1039, 1055.  The amendments made by TRA apply in the case of proceedings commenced after August 5, 1997.  Id. Inasmuch as the petition herein was filed on September 2, 1997, the amendments made by TRA apply in the present case.[4]

A. Requirements for a Judgment Under Section 7430

Under section 7430(a), a judgment for litigation costs incurred in connection with a court proceeding may only be awarded if a taxpayer: (1) Is the "prevailing party"; (2) has exhausted his or her administrative remedies within the IRS; and (3) did not unreasonably protract the court proceeding.  Sec. 7430(a) and (b)(1), (3).  Similarly, a judgment for administrative costs incurred in connection with an administrative proceeding may only be awarded under section 7430(a) if a taxpayer: (1) Is the "prevailing party"; and (2) did not unreasonably protract the administrative proceedings.  Sec. 7430(a) and (b)(3).

A taxpayer must satisfy each of the respective requirements in order to be entitled to an award of litigation or administrative costs under section 7430.  Rule 232(e).  Upon satisfaction of these requirements, a taxpayer may be entitled to

---

[4] Congress amended sec. 7430 in the IRS Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec 3101, 112 Stat. 685, 727-730.  However, the amendments made by RRA 1998 apply only to costs incurred more than 180 days after July 22, 1998.  Inasmuch as none of the claimed costs were incurred more than 180 days after July 22, 1998, the amendments made by RRA 1998 do not apply in the present case.

reasonable costs incurred in connection with the administrative or court proceedings. Sec. 7430(a)(2) and (c)(1).

To be a prevailing party, the taxpayer must substantially prevail with respect to either the amount in controversy or the most significant issue or set of issues presented and satisfy the applicable net worth requirement. Sec. 7430(c)(4)(A). Respondent concedes that petitioners have satisfied the requirements of section 7430(c)(4)(A). Petitioners will nevertheless fail to qualify as the prevailing party if respondent can establish that his position in the court and administrative proceedings was substantially justified. Sec. 7430(c)(4)(B).

B. Substantial Justification

The Commissioner's position is substantially justified if, based on all of the facts and circumstances and the legal precedents relating to the case, respondent acted reasonably. Pierce v. Underwood, 487 U.S. 552 (1988); Sher v. Commissioner, 89 T.C. 79, 84 (1987), affd. 861 F.2d 131 (5th Cir. 1988). A position is substantially justified if the position is "justified to a degree that could satisfy a reasonable person". Pierce v. Underwood, supra at 565 (construing similar language in EAJA). Thus, the Commissioner's position may even be incorrect but substantially justified "if a reasonable person could think it correct". Maggie Management Co. v. Commissioner, 108 T.C. 430, 443 (1997).

The relevant inquiry is "whether * * * [the Commissioner] knew or should have known that [his] position was invalid at the onset". Nalle v. Commissioner, 55 F.3d 189, 191 (5th Cir. 1995), affg. T.C. Memo. 1994-182. We look to whether the Commissioner's position was reasonable given the available facts and circumstances at the time that the Commissioner takes his position. Maggie Management Co. v. Commissioner, supra at 443; DeVenney v. Commissioner, 85 T.C. 927, 930 (1985).

The fact that the Commissioner eventually loses or concedes a case does not establish an unreasonable position. Bouterie v. Commissioner, 36 F.3d 1361, 1367 (5th Cir. 1994), revg. on other grounds T.C. Memo. 1993-510; Estate of Perry v. Commissioner, 931 F.2d 1044, 1046 (5th Cir. 1991); Sokol v. Commissioner, 92 T.C. 760, 767 (1989). However, the Commissioner's concession does remain a factor to be considered. Powers v. Commissioner, 100 T.C. 457, 471 (1993), affd. in part, revd. in part and remanded on another issue 43 F.3d 172 (5th Cir. 1995).

As relevant herein, the position of the United States that must be examined against the substantial justification standard with respect to the recovery of administrative costs is the position taken by respondent as of the date of the notice of deficiency. Sec. 7430(c)(7)(B). The position of the United States that must be examined against the substantial justification standard with respect to the recovery of litigation costs is the position taken by respondent in the answer to the

petition.  <u>Bertolino v. Commissioner</u>, 930 F.2d 759, 761 (9th Cir. 1991), affg. an unpublished decision of the Tax Court; <u>Sher v. Commissioner</u>, 861 F.2d 131, 134-135 (5th Cir. 1988), affg. 89 T.C. 79 (1987).  Ordinarily, we consider the reasonableness of each of these positions separately.  <u>Huffman v. Commissioner</u>, 978 F.2d 1139, 1144-1147 (9th Cir. 1992), affg. in part, revg. in part and remanding on other issues T.C. Memo. 1991-144.  In the present case, however, we need not consider two separate positions because there is no indication that respondent's position changed or that respondent became aware of any additional facts that rendered his position any more or less justified between the issuance of the notice of deficiency and the filing of the answer to the petition.

We now turn to petitioners' contention that respondent's position was not substantially justified.  In this regard we hold that respondent has established that he was substantially justified, having acted reasonably given the legal precedents and the circumstances surrounding petitioners' case.

Citing <u>Price v. United States</u>, 335 F.2d 671, 677 (5th Cir. 1964),[5] petitioners argue that respondent should have taken into account any and all nontaxable sources of income of which the

_____

[5]  In <u>Price v. United States</u>, 335 F.2d 671, 677 (5th Cir. 1964), the Court of Appeals held that the taxpayer failed to sustain his burden of rebutting the presumption of correctness that attaches to the Commissioner's bank deposits determination.

respondent had knowledge. Petitioners imply that regardless of whether or not petitioners' claims were substantiated, respondent should have simply adjusted his bank deposits analysis by petitioners' claim that the deposits were from loans, inheritances, gifts, and previously taxed corporate income. We do not agree.

Respondent's position was premised primarily on the bank deposits method and petitioners' failure to substantiate items that petitioners claimed as nontaxable deposits. It is well established that unexplained bank deposits are presumptively from taxable sources, see, e.g., Mallette Bros. Constr. Co. v. United States, 695 F.2d 145, 148 (5th Cir. 1983); Price v. United States, supra at 677; DiLeo v. Commissioner, 96 T.C. 858, 868 (1991), affd. 959 F.2d 16 (2d Cir. 1992), and that the taxpayer bears the burden of proving that the Commissioner's determination of income based on the bank deposits method is erroneous. Clayton v. Commissioner, 102 T.C. 632, 645 (1994); DiLeo v. Commissioner, supra at 868; see Calhoun v. United States, 591 F.2d 1243, 1245 (9th Cir. 1978) (taxpayer's burden to prove that unexplained bank deposits came from a nontaxable source).

Thus, respondent was entitled to rely upon his bank deposits analysis of petitioners' income in the absence of substantiation regarding nontaxable sources of income. We do not regard the information given to respondent's agents prior to the issuance of

the notice of deficiency regarding either the alleged loans or the corporate source of deposits to constitute substantiation of petitioners' position regarding nontaxability of the deposits.

We recognize that in utilizing the bank deposits method, respondent was required to investigate any leads regarding nontaxable sources of income that were "reasonably susceptible of being checked".  See Holland v. United States, 348 U.S. 121, 135-136 (1954).  However, we find that respondent's Revenue Agent Bacino and respondent's Appeals officer reasonably investigated petitioners' allegations regarding nontaxable sources.

After contacting the alleged lenders, Revenue Agent Bacino determined that with one exception petitioners had failed to substantiate the loans.  There were no written agreements or terms for the alleged loans nor was there any evidence of principal or interest payments towards these loans.  Revenue Agent Bacino thus sought substantiation of these loans by means of contacting the individual lenders.  However, he concluded that the individuals listed as lenders lacked credibility.  He found no convincing evidence to substantiate the loans, inheritance, or gifts.  In fact, even at this point, after reviewing all of the supporting documentation presented by petitioners, the Court is not convinced of the existence of the alleged loans.  Cf. Schneebalg v. Commissioner, T.C. Memo. 1988-563 (without corroborating evidence, the Court was not convinced based on the

taxpayer's self-serving testimony that deposits to the taxpayer's account were nontaxable loan deposits).

Respondent was also substantially justified in rejecting petitioners' position regarding the corporate source of deposits to petitioner's personal accounts. Section 6001 imposes on petitioners an affirmative duty to maintain books and records sufficient to support items reported on their returns. With this well-established law in mind, we think that it was reasonable for respondent to make the adjustments pursuant to the bank deposits analysis and to refuse to concede any of these adjustments until he received and verified petitioners' substantiation for these amounts. See Harrison v. Commissioner, 854 F.2d 263, 265 (7th Cir. 1988), affg. T.C. Memo. 1987-52; Sokol v. Commissioner, supra at 765. Respondent was not required to accept unconditionally petitioners' uncorroborated summary bank account statements prepared by their accountant or petitioners' otherwise unsubstantiated statements regarding nontaxable income flowing from a corporate source.

We also observe that petitioners ultimately conceded that they failed to report 50 percent of the unreported income determined in the notice of deficiency.

Petitioners rely heavily on the fact that respondent's counsel agreed to settle this case for 50 percent of the unreported income determined in the notice of deficiency even though he was given no more information than Revenue Agent Bacino

or respondent's Appeals officer. However, the fact that respondent's counsel agreed to settle the case is certainly not conclusive that Revenue Agent Bacino's adjustments and respondent's subsequent position that resulted therefrom were unreasonable. As we have already stated, the Commissioner's concession of an issue does not necessarily lead to a finding that the Commissioner's position was not substantially justified. See, e.g., Wilfong v. United States, 991 F.2d 359, 364 (7th Cir. 1993); Sokol v. Commissioner, supra; Wasie v. Commissioner, 86 T.C. 962, 968-969 (1986). We are aware that respondent's attorneys have much more latitude to settle a case based on the hazards of litigation and other considerations than do respondent's Appeals officers or revenue agents.

Finally, petitioners argue that the standard for awarding costs under section 7430 by the Court of Appeals for the Fifth Circuit, the circuit to which this case is appealable, supports their claim for costs. We have reviewed many Fifth Circuit cases, including those cited by petitioners, and conclude that our decision herein properly applies the Fifth Circuit's standard regarding the award of costs under section 7430 and is consistent with the precedents established by that court. See Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971).

Therefore, we hold that respondent has established that his position in the administrative and litigation proceedings was

substantially justified.  In light of the foregoing, petitioners are not entitled to recover administrative or litigation costs.

Based on the foregoing, we need not decide whether petitioners' claimed costs are reasonable.

To reflect the foregoing,

<u>An appropriate order and decision will be entered</u>.